**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LINDRAN PROPERTIES, LLC (SHORELINE) | ) | Case No. 20-02834 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |
| | ) | |
| | ) | |

**ORDER (A) APPROVING BID PROCEDURES AND BID PROTECTIONS IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES,
(B) APPROVING THE FORM AND MANNER OF NOTICE, (C) APPROVING NOTICE
OF THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, (D) SCHEDULING A SALE HEARING AND, IF NECESSARY,
AN AUCTION, (E) APPROVING THE STALKING HORSE BID, AND (F) GRANTING
RELATED RELIEF**

This matter coming to be heard on the motion (the "Motion") of Lindran Properties, LLC

(Shoreline), debtor and debtor in possession (collectively, "Debtor"), for the entry of an order,

(a) authorizing and approving the bid procedures in connection with the sale of the Property[1] free

and clear of all liens, claims, and encumbrances; (b) approving the form and manner of notice of

an auction and sale hearing with respect to the sale (the "Sale"); (c) approving the notice of the

assumption and assignment of executory contracts and unexpired leases; (d) scheduling such

auction (if necessary) and sale hearing; (e) approving the selection of a stalking horse bidder (the

"Stalking Horse Bidder"); and (f) granting related relief; it appearing that the relief requested is

in the best interests of the Debtors' bankruptcy estates, its creditors, and other parties in interest;

the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to

28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a

---

[1] The "Property" means the improved real property located in Chicago, Illinois consisting of 264 low income housing units in 13 buildings as more fully described in the Agreement.

1

core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted as set forth herein. All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

2.     All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

## I.     Bid Procedures, Auction and Related Relief

3.     The Bid Procedures, as set forth in the Motion and attached to **Exhibit 1**, are hereby approved in their entirety, and the Bid Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Property.

4.     Any party desiring to bid on the Property shall comply with the Bid Procedures set forth in the Motion and this Order. The Debtor shall provide a copy of the Bid Procedures to all interested parties as provided for in the Bid Procedures and Sale Notice. The Debtor is authorized to take any and all actions necessary to implement the Bid Procedures.

5.     If the Debtor does not receive a Qualified Bid from a Qualified Bidder, other than the Stalking Horse Bid, on or before the Bid Deadline, the Debtor will cancel the Auction and proceed with the Stalking Horse Bid as the Successful Bid. If one or more Qualified Bids, in addition to the Stalking Horse Bid, are received by the Debtor on or before the Bid Deadline, the Debtor will conduct the Auction to determine the Successful Bidder with respect to the Property.

6.     The Debtor may: (a) select, pursuant to the Bid Procedures, the highest or

223059140.v5

otherwise best Bid(s) and the Successful Bidder(s) or Backup Bidder(s) after consultation with the Trustee; (b) reject any bid, other than the Stalking Horse Bid, (regardless of whether such bid is a Qualified Bid) that, in the Debtor's business judgment, in consultation with the Trustee, is (i) inadequate, insufficient, or not the highest or best bid, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Bid Procedures, or (iii) contrary to, or otherwise not in the best interests of the Debtor's estate, creditors, or other parties in interest.

7.      Except for the Professional Fee Carve-Out, the Earnest Money, Break-Up Fee, and Expense Reimbursement, all liens, claims, encumbrances, and interests on the Property, including, without limitation, the asserted liens, claims, and encumbrances of the Receiver, the Trustee, and Paper Street Realty, LLC, shall attach to the proceeds from the Sale with the same force, effect, validity, and priority as such liens, claims, encumbrances, and interests had on such Property prior to the closing of the Sale, pursuant to applicable law and any order entered by the Court.

## II.    Stalking Horse Bid

8.      The Debtor has entered into the Agreement with PRE Holdings 14, LLC as purchaser for the Property, and designates it as the "Stalking Horse Bidder" in accordance with the Bid Procedures. The Stalking Horse Bidder is approved. The Debtor is authorized to perform any obligations set forth in the Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order.

9.      The Bid Protections are approved. The Debtor is authorized to pay the Bid Protections, as applicable, to the Stalking Horse Bidder out of the proceeds from any Alternative Transaction to a Qualified Bidder, other than the Stalking Horse Bidder, pursuant to the Bid

Procedures. The Bid Protections shall be paid from the proceeds of such transaction as a superpriority administrative expense claim senior to all other administrative expense claims, and prior to any recovery by the Trustee under Section 364(c)(1) of the Bankruptcy Code.

10.     The Trustee shall be allowed to credit bid for the Property at the Auction pursuant to Section 363(k) of the Bankruptcy Code, subject to any liens or claims of greater priority. If the Trustee is the Successful Bidder in an Alternative Transaction, the Trustee shall pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder in cash within three (3) days of the Closing.

### III.    Important Dates and Deadlines

11.     <u>Sale Notice, Auction and Sale Hearing</u>.  The Sale Notice as attached hereto as **Exhibit 1** is approved. The Debtor shall serve a copy of the Sale Notice, on or before the date that is two (2) business days after entry of this Order, by first class mail on (a) the U.S. Trustee; (b) counsel to Trustee; (c) the Illinois Finance Authority; (d) counsel to the Stalking Horse Bidder; (e) all entities known to have expressed a bona fide interest in acquiring the Property; (f) any receiver(s) in possession of the Property; (g) the City of Chicago; (h) all creditors of Debtor; (i) all tenants at the Property; (j) all federal, state, and local taxing authorities, recording offices or any other governmental authorities that may have claims, contingent or otherwise, against the Debtor's estate, or that are parties to governmental approvals or permits, or that have a reasonably known interest in the relief requested by the Motion; (k) all contractual counterparties to the Executory Contracts; and l) all parties who have filed appearances or requested notices through the Court's CM/ECF system.  The Debtor shall file a certificate of service with respect to any and all other forms of marketing, including without limitation, any notice of publication.

12.     <u>Bid Deadline</u>.  Sixty (60) days after entry of this Order is the deadline by which

4

all bids for the Property must be <u>actually received</u>, unless otherwise extended by the Debtor in accordance with the Bid Procedures (the "<u>Bid Deadline</u>"), by each of the following via email (in .pdf or similar format):

    (a)    Debtor's counsel, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, Attn: Scott Schreiber (sschreiber@clarkhill.com); Kevin H. Morse (kmorse@clarkhill.com); and Chad Poznansky (cpoznansky@clarkhill.com); and

    (b)    Trustee's counsel, McDermott Will & Emery LLC, 444 W. Lake Street, Suite 4000, Chicago, Illinois 60606, Attn: William P. Smith (wsmith@mwe.com) and James W. Kapp III (jkapp@mwe.com).

Any party interested in submitting a bid shall have the opportunity to enter the Property and make physical inspections and/or review all contracts, leases, permits, environmental reports, financial statements, and other such books and records related to the ownership and operation of the Property within the possession and control of the Receiver ("<u>Due Diligence</u>").  The Debtor shall cooperate and coordinate with the interested party and Receiver with the completion of the Due Diligence to be completed prior to the Bid Deadline.

    13.    <u>Auction</u>.  If one or more Qualified Bids, in addition to the Stalking Horse Bid, is received on or before the Bid Deadline, an Auction will be held at the offices of counsel to the Debtor, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, **two (2) business days after the Bid Deadline** or such later time on such day or other place as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids. As set forth more fully in the Bid Procedures, only Qualified Bidders shall be permitted to participate at the Auction.

    14.    <u>Sale Objection Deadline</u>. Objections, if any, to the Sale must be made by **two (2) business days after the Auction, if one is held, or four (4) business days after the Bid Deadline** (the "<u>Objection Deadline</u>"). Objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules of the United States

Bankruptcy Court for the Northern District of Illinois (the "Local Rules"); (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be **actually received** no later than the Objection Deadline by:

    (a)    Debtor's counsel, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, Attn.: Scott Schreiber (sschreiber@clarkhill.com); Kevin H. Morse (kmorse@clarkhill.com); and Chad Poznansky (cpoznansky@clarkhill.com); and

    (b)    Trustee's counsel, McDermott Will & Emery LLC, 444 W. Lake Street, Suite 4000, Chicago, Illinois 60606, Attn: William P. Smith (wsmith@mwe.com) and James W. Kapp III (jkapp@mwe.com).

For the avoidance of doubt, any party asserting a lien in the proceeds of the Sale may file an objection to the Sale, on or prior to the Objection Deadline, contesting the sale of the Property free and clear of such asserted liens or contesting the priority of any other lien, claim, or encumbrance against the Property.

15.    A party's failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale with the Stalking Horse Bidder, or any other Successful Bidder, pursuant to the applicable Agreement, including the assumption and assignment of the Executory Contracts to the Stalking Horse Bidder pursuant to the Agreement, or any other Successful Bidder, pursuant to any applicable agreement, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation, such assumption and assignment.

16.    Service Contracts Notice; Objection Deadline. The Stalking Horse Bidder shall send written notice to the Debtor designating which Service Contracts, if any, Stalking Horse Bidder desires to have Debtor assume pursuant to Section 365 of the Bankruptcy Code (the

6

223059140.v5

"Designation") no later than the date that is twenty-one (21) days after entry of the Bid Procedures Order.  The Debtor shall then file and serve, within two days of receipt of the Designation, written notice via U.S. Mail to each counterparty to a Service Contract (the "Service Contract Notice"), substantially in the form attached hereto as **Exhibit 2** (which notice is hereby approved), of Stalking Horse Bidder's intent to assume such Service Contracts.  All assumed Service Contracts, pursuant to the Service Contract Notice, shall be the "Assumed Service Contracts."

17.     Any Successful Bidder in an Alternative Transaction shall have two (2) business days after the conclusion of the Auction to provide written notice to the Debtor designating which Service Contracts, if any, the Successful Bidder desires to have the Debtor assume or reject pursuant to Section 365 of the Bankruptcy Code.  On or after the first business day after receipt of the designated Service Contracts from any other Successful Bidder, the Debtor shall serve copies of the Service Contracts Notice, via overnight mail, on all counterparties to the designated Service Contracts.  Objections, if any, to the assumption and assignment of a Service Contract or the adequate assurance of future performance of such Service Contract, must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be **actually received** by the parties set forth in Paragraphs 12(a)-(b) above no later than one (1) day prior to the Sale Hearing or such other date agreed to by the Debtor and such objecting party.

18.     If the counterparty to a Service Contract does not timely and properly file an objection in the manner set forth above, then such counterparty may be deemed to consent to the assumption and assignment of the Service Contract. If the counterparty timely and properly files

an objection, then, as set forth in the Service Contract Notice, such counterparty shall have the opportunity to appear before the Court at the Sale Hearing. In addition, if an objection is not timely and properly filed and served in accordance with this Order, (a) a Service Contract may be assigned to the Successful Bidder, (b) the failure to object shall be deemed consent to the assumption and assignment for the purposes of section 365(c) of the Bankruptcy Code or otherwise, (c) the counterparty to a Service Contract shall be forever barred from asserting any other claim arising prior to the assignment, if applicable, against the Debtor or the Successful Bidder as to the Service Contract, and (d) with respect to a Service Contract, the Successful Bidder's promise to perform under the Service Contract shall be deemed adequate assurance of future performance under the Service Contract.

19.     Any Service Contract that is not deemed an Assumed Service Contract shall remain part of the Debtor's bankruptcy estate and shall have an opportunity, following notice and a motion filed by the Debtor, to assert a claim for damages arising from the rejection of such Service Contract.

20.     Sale Hearing. The Sale Hearing shall commence on _____, 2020 at ___:___ ___.m. before the Honorable Jack B. Schmetterer in Courtroom 682 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or before any other judge who may be sitting in 682 place and stead. The Sale Hearing may be adjourned (with the consent of the Stalking Horse Bidder or Successful Bidder and Trustee not to be unreasonably withheld) without further notice other than by announcement in open Court or on the Court's calendar.  The Debtor shall file and serve a proposed order approving the Sale no later than seven (7) days prior to the Sale Hearing.

8

## IV.    Miscellaneous.

21.    Notwithstanding Local Rule 5005-3(D), the Debtor is authorized to file the Motion in an amount exceeding 15 pages without filing a separate motion for relief.

22.    The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion

23.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

24.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Date:   February ___, 2020                          _____
        Chicago, Illinois                           United States Bankruptcy Judge

Prepared By:

Scott N. Schreiber (#06191042)
Kevin H. Morse (#06297244)
CLARK HILL PLC
130 East Randolph Street | Suite 3900
Chicago, Illinois 60601
T: (312) 985-5595
F: (312) 985-5984
sschreiber@clarkhill.com
kmorse@clarkhill.com                    _____

9

# Exhibit 1

223059140.v5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LINDRAN PROPERTIES, LLC (SHORELINE) | ) | Case No. 20-02834 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |
| | ) | |
| | ) | |

**NOTICE OF BID PROCEDURES, AUCTION,
AND SALE HEARING**

**PLEASE TAKE NOTICE** that on February 11, 2020, Lindran Properties, LLC (Shoreline), debtor and debtor in possession (collectively, "<u>Debtor</u>" or "<u>Sellers</u>"), filed the *Debtor's Motion for Entry of (I) an Order (a) Approving Bid Procedures and Bid Protections in Connection with the Sale of Substantially All of the Debtor's Assets Free and Clear of all Lien, Claims, and Encumbrances, (b) Approving the Form and Manner of Notice, (c) Approving Notice of the Assumption and Assignment of the Executory Contracts and Unexpired Leases; (d) Scheduling a Sale Hearing and, If Necessary, an Auction, (e) Approving the Stalking Horse Bid, and (f) Granting Related Relief; and (II) an Order (a) Approving the Purchase and Sale Agreement, (b) Authorizing the Sale of the Property Free and Clear of All Liens, Claims, Encumbrances, and Interests, (c) Authorizing the Assumption and Assignment of the Executory Contracts and Unexpired Leases, and (d) Granting Related Relief* (the "<u>Motion</u>")[1] with the United States Bankruptcy Court for the Northern District of Illinois (the "<u>Court</u>") seeking, among other things, entry of an order authorizing and approving: (a) the procedures for the sale of the Property[2] free and clear of liens, claims, interests, and encumbrances; (b) notice of the assumption and assignment of the designated executory contracts; (c) a hearing for the approval of the Sale and, if necessary, an auction; and (d) approving the Stalking Horse Bid.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has entered into a stalking horse agreement for the sale of the Property and is soliciting higher and better offers for the purchase of the Property consistent with the Bid Procedures (the "<u>Bid Procedures</u>") approved by the Court by entry of an order on February __, 2020 [Docket No.     ] (the "<u>Bid Procedures Order</u>"). **<u>All interested bidders should carefully read the Bid Procedures and Bid Procedures Order</u>**. A copy of the Bid Procedures is attached hereto as **Exhibit 1-A**.  To the extent that there are any inconsistencies between this notice and the Bid Procedures or Bid Procedures Order, the Bid Procedures or Bid Procedures Order, as applicable, shall govern in all respects.

---

[1] All capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

[2] The "<u>Property</u>" means the improved real property located in Chicago, Illinois consisting of 264 low income housing units in 13 buildings as more fully described in the Agreement.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtor receives qualified competing bids within the requirements and time frame specified by the Bid Procedures, the Debtor will conduct an auction (the "Auction") of the Property on **April [●], 2020 at 10:00 a.m. (prevailing Central Time)** at the offices of Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601 (or at any other location as the Debtor may hereafter designate on proper notice).

**PLEASE TAKE FURTHER NOTICE** that the Debtor will seek approval of the Sale at a hearing scheduled to commence at **April [●], 2020 at     :     a.m. (prevailing Central Time)** (the "Sale Hearing") before the Honorable _____ in Courtroom _____ in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be actually received no later than **April [●], 2020 at 5:00 p.m. (prevailing Central Time)** (the "Objection Deadline") by the counsel to the (a)  Debtor, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, Attn.: Scott Schreiber (sschreiber@clarkhill.com); Kevin H. Morse (kmorse@clarkhill.com); and Chad Poznansky (cpoznansky@clarkhill.com); and (b) Trustee, McDermott Will & Emery LLC, 444 W. Lake Street, Suite 4000, Chicago, Illinois 60606, Attn: William P. Smith (wsmith@mwe.com) and James W. Kapp III (jkapp@mwe.com).

<u>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</u>

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THIS NOTICE SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE OWNED REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS**

## NO SUCCESSOR OR TRANSFER LIABILITY

The proposed Sale Order shall provide that the Successful Bidder(s) arising from the Sale, or Auction if held, will have no responsibility for, and the Property will be sold free and clear of, any successor liability, including the following: (a) any liability or other obligation of the Debtor's estate or related to the Property other than as expressly set forth in the applicable Agreement; or (b) any claims against the Debtor, its estate, or any of their predecessors or affiliates other than as expressly set forth in the applicable Agreement. Except as expressly provided in the Sale Order, the Successful Bidder(s) shall have no liability whatsoever with respect to the Debtor's estate (or their predecessors' or affiliates') respective businesses or operations or any of the Debtor's estate (or their predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the closing of the Sale, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the closing of the Sale, including, but not limited to, liabilities on account of any taxes or governmental fines arising, accruing or payable under, out of, in connection with, or in any way relating to the Property or operation of the Debtor prior to the closing of the Sale .

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, and any exhibits thereto, including the Bid Procedures Order, the Agreement, and the proposed Sale Order, are available: (a) upon request to counsel for the Debtor by e-mailing kmorse@clarkhill.com or by calling (312) 985-5556; or (b) for a fee via PACER by visiting http://www.ilnd.uscourts.gov.

Dated: February __, 2020                    Respectfully submitted,

                                            **LINDRAN PROPERTIES, LLC
                                            (SHORELINE)**

                                            By: /s/ *Kevin H. Morse*
                                                    One of Its Proposed Attorneys

                                            Scott N. Schreiber (#06191042)
                                            Kevin H. Morse (#06297244)
                                            CLARK HILL PLC
                                            130 East Randolph Street | Suite 3900
                                            Chicago, Illinois 60601
                                            T: (312) 985-5595
                                            F: (312) 985-5984
                                            sschreiber@clarkhill.com
                                            kmorse@clarkhill.com

223059140.v5

# Exhibit 1-A

223059140.v5

## Bid Procedures

a.  **Property**.  The "Property" means the improved real property located in Chicago, Illinois consisting of 264 low income housing units in 13 buildings as more fully described in the *Real Estate Purchase and Sale Agreement* (the "Agreement") entered into on January 17, 2020 by and between Lindran Properties LLC (the "Debtor") and PRE Holdings 14 LLC. The Property will be sold to the Stalking Horse Bidder subject to qualified overbids.

b.  **Bid Requirements**.   Any bid for the Property must be submitted in writing and determined by Debtor, in its reasonable business judgment, and in consultation with the Trustee[1] to have satisfied the following requirements (the satisfaction of which creates a "Qualified Bid" and "Qualified Bidder"):

> (i)      Initial Overbid:  Debtor has entered into the Agreement with PRE Holdings 14 LLC to be the Stalking Horse Bidder (the "Stalking Horse Bidder") for the purchase of the Property.  The consideration proposed by each bid seeking to acquire the Property must equal or exceed the sum of:
>
> > (A)      cash in the amount of $3,900,000.00 (the "Stalking Horse Bid"); plus
> >
> > (B)      $50,000 in cash; plus
> >
> > (C)      The Break-Up Fee and Expense Reimbursement (defined in Paragraph 12(h) below) (collectively, the "Initial Overbid")
>
> (ii)      Deposit:  Each bid must be accompanied by a cash deposit in the amount of five percent (5%) of the bid to be held in an escrow account to be identified and established by Debtor, with the consent of the Trustee (the "Deposit").
>
> (iii)      Agreement:  Each bid seeking to acquire the Property shall include a blackline clearly marked to show any changes requested by the bidder compared with the Agreement.
>
> (iv)      Closing Date:  Each bid must provide for a closing to occur on or within thirty (30) days of entry of the Sale Order, unless continued by agreement.
>
> (v)      Superior Proposal; Bid Documents:  Except as otherwise provided herein, each bid must be, in reasonable business judgment of the Debtor, in consultation with the Trustee, substantially on the same or better terms than the terms of the Agreement and the Stalking Horse Bid.  Each bid must include duly executed transaction documents necessary to effectuate the restructuring transactions contemplated in the bid (the "Bid Documents").   The Bid Documents shall

---

[1] The "Trustee" shall mean UMB Bank, N.A., the duly-appointed and acting successor trustee under the indenture for the Multifamily Housing Revenue Bonds: Shoreline Portfolio Project (Series 2016A, Taxable Series 2016B, Subordinate Series 2016C)

223059140.v5

include a copy of the applicable Agreement clearly marked to show all changes requested by the bidder (including those related to the Purchase Price) as well as all other material documents integral to such bid.

(vi)    Demonstrated Financial Capacity; Committed Financing:  A Bidder must have, in the Debtor's reasonable business judgment, in consultation with the Trustee, the necessary financial capacity to consummate the proposed transactions required by its bid.  Each bid must also include committed irrevocable financing, documented to Debtors' reasonable satisfaction, that demonstrates the bidder has received sufficient debt and/or equity funding commitments to satisfy the bidder's Purchase Price and other obligations under its bid, including the identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom Clark Hill PLC should contact regarding such committed financing.  Such funding commitments or other financing shall not be subject to any internal approvals, syndication requirements, diligence, credit committee approvals, or any other contingencies, and shall have covenants and conditions reasonably acceptable to the Debtor, after consultation with the Trustee.

(vii)    Identity: Each bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such bid (including each equity holder or other financial backer of the bidder if such bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any bid.  Each bid must also include contact information for the specific person(s) whom Clark Hill PLC should contact regarding such Bid.

(viii)    Contingencies; No Financing or Diligence Outs:  A bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

(ix)    Irrevocable:  A Qualified Bid shall be irrevocable unless and until the Debtor accepts a higher Qualified Bid (as defined herein) and such bidder is not selected as the backup bidder (as defined herein).

(x)    Expenses:  Each bidder presenting a bid or bids shall bear its own costs and expenses (including legal fees) in connection with the proposed transaction.

(xi)    Authorization: Each bid must contain evidence that the bidder has obtained authorization or approval from its Board of Directors (or a comparable governing body acceptable to the Debtor) with respect to the submission of its bid and the consummation of the transactions contemplated in such bid.

(xii)    As-Is, Where-Is: Each bid must include a written acknowledgement and representation that the bidder:  (i) has had an opportunity to conduct any and all

2

due diligence regarding the Property prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the bidder's proposed Agreement.

(xiii)   Existing Violations.  Each bid shall provide that the bidder must acquire the Property subject to all building code violations and court cases arising from building code violations (but not any monetary fines, penalties, or awards assessed before the closing date of such purchase).

c.   **Bid Deadline**.  Each bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before sixty (60) days following the entry of the Bid Procedures Order by each of the following:

> (i)     Debtor's counsel, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, Attn.: Scott Schreiber (sschreiber@clarkhill.com); Kevin H. Morse (kmorse@clarkhill.com); and Chad Poznansky (cpoznansky@clarkhill.com)

> (ii)    Trustee's counsel, McDermott Will & Emery LLC, 444 W. Lake Street, Suite 4000, Chicago, Illinois 60606, Attn: William P. Smith (wsmith@mwe.com) and James W. Kapp III (jkapp@mwe.com)

Any party interested in submitting a bid shall have the opportunity to enter the Property and make physical inspections and/or review all contracts, leases, permits, environmental reports, financial statements, and other such books and records related to the ownership and operation of the Property within the possession and control of the Receiver ("Due Diligence").  The Debtor shall cooperate and coordinate with the interested party and Receiver with the completion of the Due Diligence prior to the Bid Deadline.

d.   **The Auction**.  If one or more Qualified Bids are submitted, in addition to the Stalking Horse Bid, the Debtor will conduct an auction (the "Auction") to determine the highest and best offer with respect to the Property. The Qualified Bid that, in the reasonable business judgment of Debtor, in consultation with the Trustee, constitutes the highest and best offer will become the "Successful Bid" and the applicable Qualified Bidder, the "Successful Bidder." Subject to court approval, the Successful Bidder will then be entitled to purchase the Property in accordance with the terms of the Successful Bid. If no additional Qualified Bids are submitted, the Debtor will cancel the Auction and proceed with the Stalking Horse Bid as the Successful Bid.

e.   **Terms of Overbids**.  During the course of the Auction, Debtor shall, after the submission of each overbid, promptly inform each Qualified Bidder which overbid reflects, in the view of the Debtor, in consultation with the Trustee, the highest or otherwise best bid for

223059140.v5

the Property.  All overbids in excess of the Initial Overbid at the Auction shall initially be in minimum increments of at least $25,000 in cash.

f.   **Highest or Otherwise Best Bid**.   When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor, in consultation with the Trustee, shall consider the following factors in addition to any other factors that Debtors deem appropriate:  (a) the number, type, and nature of any changes to the applicable Agreement requested by the Qualified Bidder; (b) the amount and nature of the total consideration; (c) whether the Qualified Bid includes a Portfolio Transition Services Agreement on same or similar terms; (d) the likelihood of the bidder's ability to close a transaction and the timing thereof; (e) the net economic effect of any changes to the value to be received by Seller's estate from the transaction contemplated by the Bid Documents; and (f) the tax consequences of such Qualified Bid.

g.   **Backup Bidder**.  If an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Property, as determined by Debtors in the exercise of their reasonable business judgment, in consultation with the Trustee, shall be required to serve as "Backup Bidder." Should the Successful Bidder fail to consummate the sale of the Property, for any reason whatsoever, the Backup Bidder will become the new Successful Bidder and will be both entitled and obligated to consummate the sale of the Property. Debtors may designate as many Backup Bidders as necessary until either the Property is sold or no Qualified Bidders remain eligible to serve as Backup Bidder.

h.   **Bid Protections**.  In the event that the Debtor accepts a Successful Bid in accordance with the Bid Procedures Order (an "Alternative Transaction"), other than an overbid by the Stalking Horse Bidder, the Stalking Horse Bidder shall be entitled to: (i) payment of a break-up fee (the "Break-Up Fee") in an amount equal to three percent (3%) of the Stalking Horse Bid; and (ii) any properly documented, reasonable costs and expenses incurred by Stalking Horse Bidder in negotiating and documenting the Proposed Transaction in an amount up to $100,000  (the  "Expense Reimbursement").  The Break-Up Fee and Expense Reimbursement shall be paid in cash from the proceeds of, and concurrent, with the closing of any Alternative Transaction or as otherwise ordered by the Bankruptcy Court.  The Break-Up Fee shall be paid as and constitute a superpriority administrative expense claim senior to all other administrative expense claims and payable out of the proceeds from any Alternative Transaction, prior to any recovery by any lienholder under Section 364(c)(1) of the Bankruptcy Code. For the avoidance of doubt, the Stalking Horse Bidder shall not be provided a credit for the Break-Up Fee or Expense Reimbursement in any overbid and any such overbid must be paid in cash.

i.   **Credit Bid.**  The Trustee shall be allowed to credit bid for the Property pursuant to Section 363(k) of the Bankruptcy Code, subject to all lien, claims, and encumbrances of greater priority. If the Trustee is the Successful Bidder in an Alternative Transaction, the Trustee shall pay the Break-Up Fee and Expense Reimbursement in cash within three (3) days of the Closing Date.

223059140.v5

j.    **Return of Deposit**. The Successful Bidder's Deposit shall be applied to the purchase price of such transaction at closing. The Deposit of each Qualified Bidder, including the Stalking Horse Bidder if it is not the Successful Bidder or Backup Bidder, shall be held in one or more escrow accounts on terms acceptable to Debtor, after consultation with the Trustee, and shall be returned (other than with respect to any Successful Bidder or Backup Bidder) on or within five (5) business days after the Auction. If a Successful Bidder (other than the Stalking Horse Bidder) fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtor shall not have any obligation to return the Deposit attributable to such Successful Bidder, which may be retained by Debtor as damages, without limiting any and all rights, remedies, and/or causes of action that may be available to the Debtor, and Debtor shall be free to consummate the proposed transaction with the Backup Bidder without the need for an additional hearing or order of the Bankruptcy Court.

k.    **Return of Stalking Horse Earnest Money Deposit.** In the event the Sale to the Stalking Horse Bidder or an Alternative Transaction fails to close, including, without limitation, termination pursuant to Section 6 of the Agreement, then the Break-Up Fee and Expense Reimbursement will not be paid to the Stalking Horse Bidder, and the Stalking Horse Bidder will receive a return of $100,000 of the Earnest Money Deposit within three (3) business days of the termination of the Agreement.

l.    **Reservation of Rights.** Debtor reserves its right to modify these Bid Procedures, in their reasonable business judgment and in consultation with the Trustee, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Property, including, without limitation: (a) extending the deadlines set forth in these Bid Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids (other than the Stalking Horse Bid); and (f) increasing the Minimum Overbid Increment.

m.    **Sale Hearing.** The Sale Hearing shall commence on _____, 2020 at ___:___ ___.m. before the Honorable Jack B. Schmetterer in Courtroom 682 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or before any other judge who may be sitting in 682 place and stead. The Sale Hearing may be adjourned (with the consent of the Stalking Horse Bidder or Successful Bidder and Trustee not to be unreasonably withheld) without further notice other than by announcement in open Court or on the Court's calendar. The Debtor shall file and serve a proposed order approving the Sale no later than seven (7) days prior to the Sale Hearing.

# Exhibit 2

223059140.v5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LINDRAN PROPERTIES, LLC (SHORELINE) | ) | Case No. 20-02834 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |
| | ) | |
| | ) | |

**NOTICE OF ASSUMPTION AND ASSIGNMENT OF
UNEXPIRED LEASES AND EXECUTORY CONTRACTS**

  **PLEASE TAKE NOTICE** that on February 11, 2020, Lindran Properties, LLC (Shoreline), debtor and debtor in possession (collectively, "<u>Debtor</u>" or "<u>Sellers</u>"), filed the *Debtor's Motion for Entry of (I) an Order (a) Approving Bid Procedures and Bid Protections in Connection with the Sale of Substantially All of the Debtor's Assets Free and Clear of all Lien, Claims, and Encumbrances, (b) Approving the Form and Manner of Notice, (c) Approving Notice of the Assumption and Assignment of the Executory Contracts and Unexpired Leases; (d) Scheduling a Sale Hearing and, If Necessary, an Auction, (e) Approving the Stalking Horse Bid, and (f) Granting Related Relief; and (II) an Order (a) Approving the Purchase and Sale Agreement, (b) Authorizing the Sale of the Property Free and Clear of All Liens, Claims, Encumbrances, and Interests, (c) Authorizing the Assumption and Assignment of the Executory Contracts and Unexpired Leases, and (d) Granting Related Relief* (the "<u>Motion</u>")[1] with the United States Bankruptcy Court for the Northern District of Illinois (the "<u>Court</u>") seeking, among other things, entry of an order authorizing and approving: (a) the procedures for the sale of the Property[2] free and clear of liens, claims, interests, and encumbrances; (b) notice of the assumption and assignment of the designated executory contracts; (c) a hearing for the approval of the Sale and, if necessary, an auction; and (d) approving the Stalking Horse Bid.

  **PLEASE TAKE FURTHER NOTICE** that the Debtor has entered into a stalking horse agreement for the sale of the Property and is soliciting higher and better offers for the purchase of the Property consistent with the Bid Procedures (the "<u>Bid Procedures</u>") approved by the Court by entry of an order on February __, 2020 [Docket No. ] (the "<u>Bid Procedures Order</u>"). If the Debtor receives qualified competing bids within the requirements and time frame specified by the Bid Procedures, the Debtor will conduct an auction (the "<u>Auction</u>") of the Property on **April [●], 2020 at 10:00 a.m. (prevailing Central Time)** at the offices of Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601 (or at any other location as the Debtor may hereafter designate on proper notice).

---

[1] All capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

[2] The "<u>Property</u>" means the improved real property located in Chicago, Illinois consisting of 264 low income housing units in 13 buildings as more fully described in the Agreement.

223059140.v5

**PLEASE TAKE FURTHER NOTICE** that the Debtor will seek approval of the Sale and the assumption and assignment of the Assumed Service Contracts to the Successful Bidder at a hearing scheduled to commence at **April [●], 2020 at 10:30 a.m. (prevailing Central Time)** (the "Sale Hearing") before the Honorable _____ in Courtroom _____ in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, at which time and place you may appear if you so desire.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE THE COUNTERPARTY TO AN EXECUTORY CONTRACT**. Pursuant to the Bid Procedures and this notice, the Debtor hereby notifies you, pursuant to the terms of the Agreement, in the exercise of Debtor's business judgment, that your Service Contract shall be hereby assumed and assigned to the Stalking Horse Bidder (or such other Successful Bidder) upon the closing of the Sale, subject to the payment of any and all cure amounts, if any, that are agreed to by the parties (the "Cure Amount").

**PLEASE TAKE FURTHER NOTICE** that the Debtor believes that the Stalking Horse Bidder's (or such other Successful Bidder) payment of any cure amounts related to the Assumed Service Contract, as set forth in the Agreement, and the Stalking Horse Bidder's (or such other Successful Bidder) commitment to pay obligations as they come due, demonstrate adequate assurance of future performance and satisfy the requirements of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion and/or assumption and assignment of an Assumed Service Contract **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be actually received no later than **April [●], 2020 at 5:00 p.m. (prevailing Central Time)** (the "Objection Deadline") by the counsel to the (a) Debtor, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, Attn.: Scott Schreiber (sschreiber@clarkhill.com); Kevin H. Morse (kmorse@clarkhill.com); and Chad Poznansky (cpoznansky@clarkhill.com); and (b) Trustee, McDermott Will & Emery LLC, 444 W. Lake Street, Suite 4000, Chicago, Illinois 60606, Attn: William P. Smith (wsmith@mwe.com) and James W. Kapp III (jkapp@mwe.com).

If any timely filed Objection cannot be resolved by the Debtor, Stalking Horse Bidder (or such other Successful Bidder) and the objecting party, the Court shall resolve such Objection prior to assumption and assignment of the Service Contract, and upon entry of any order by the Court resolving such Objection, the assignment, if approved by the Court, shall be deemed effective as of the date such objecting party receives this written notice.

223059140.v5

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF AN EXECUTORY CONTRACT ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THIS NOTICE SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION OR ASSIGNMENT OF SUCH EXECUTORY CONTRACT**

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, and any exhibits thereto, including the Bid Procedures Order, Bid Procedures, the Agreement, and the proposed Sale Order, are available: (a) upon request to counsel for the Debtor by e-mailing kmorse@clarkhill.com or by calling (312) 985-5556; or (b) for a fee via PACER by visiting http://www.ilnd.uscourts.gov.

Dated: February __, 2020                    Respectfully submitted,

**LINDRAN PROPERTIES, LLC
(SHORELINE)**

By: /s/ *Kevin H. Morse*
            One of Its Proposed Attorneys

Scott N. Schreiber (#06191042)
Kevin H. Morse (#06297244)
CLARK HILL PLC
130 East Randolph Street | Suite 3900
Chicago, Illinois 60601
T: (312) 985-5595
F: (312) 985-5984
sschreiber@clarkhill.com
kmorse@clarkhill.com

223059140.v5