**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LINDRAN PROPERTIES, LLC (SHORELINE) | ) Case No. 20-02834 |
| | ) |
| Debtor. | ) Hon. Jack B. Schmetterer |
| | ) |
| _____ | ) |

**DECLARATION OF SCOTT N. SCHREIBER PURSUANT TO BANKRUPTCY RULES
2014 AND 2016 IN SUPPORT OF THE APPLICATION TO AUTHORIZE THE
RETENTION AND EMPLOYMENT OF CLARK HILL PLC
AS BANKRUPTCY COUNSEL**

_____

I, Scott N. Schreiber, hereby declare:

1.      I am an attorney duly licensed to practice before the United States District Court for the Northern District of Illinois and a member of the law firm of Clark Hill PLC, located at 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601.

2.      I respectfully submit this Declaration in connection with the application of the above-captioned debtor and debtor in possession (the "Debtor") to retain and employ Clark Hill PLC and the members, attorneys, and paralegals of Clark Hill PLC (collectively, "Clark Hill") as its bankruptcy counsel.

3.      I have personal knowledge of the matters set forth herein. If called upon to testify, I could testify competently to the facts contained herein.

4.      To the best of my knowledge, none of the partners, associates or paralegals of Clark Hill are related to any judge of the United States Bankruptcy Court of the Northern District of Illinois.

223091633.10
223091633.v10

5.     To the best of my knowledge, except as set forth herein, Clark Hill does not hold

or represent any interest adverse to the Debtor within the meaning of section 327(a) of the title

11, United States Code (the "Bankruptcy Code").

6.     To the best of my knowledge, Clark Hill is a "disinterested person" as such term

is defined in section 101(14) of the Bankruptcy Code.  To the best of my knowledge:

(a)     Clark Hill is not a creditor, an equity security holder, or an insider of the Debtor.

(b)     Clark Hill is not and was not, within 2 years before the Petition Date, a director, officer, or employee of the Debtor.

(c)     Clark Hill does not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason

7.     To the best of my knowledge, Clark Hill does not have any connection with the

Debtor, its creditors, the United States trustee, any person employed in the office of the United

States Trustee, or any other party in interest or their respective attorneys or accountants, within

the meaning of Fed. R. Bankr. P. 2014(a), except for the following:

(a)     Prior to the commencement of the Debtor's chapter 11 case, Clark Hill rendered services to Better Housing Foundation, an Ohio not-for-profit corporation ("BHF").  BHF is the sole member and manager of the Debtor.  BHF has separate counsel in this bankruptcy case.  BHF is not a creditor or guarantor of the Debtor.

(b)     Prior to the commencement of the Debtor's chapter 11 case, BHF was served with a subpoena from the Securities and Exchange Commission seeking records related to the events that preceded current ownership's involvement in BHF and its affiliates.  Clark Hill has and continues to represent BHF in that investigation.  BHF has paid Clark Hill separately for those services and Clark Hill is working against a retainer for those services being provided to BHF.

(c)     Prior to the commencement of the Debtor's chapter 11 case, Clark Hill rendered services to the Debtor and several affiliates of BHF, described

2

below. BHF and each of the affiliates below are separate entities. Each of the affiliates owns separate collateral and has separate and distinct creditors from each other. None of the assets of the affiliates described below are cross collateralized for the obligations of the other.

(d)     Clark Hill has rendered services in the past, is currently rendering services, and may render services in the future to BHF Chicago Housing Group B LLC., an affiliate of the Debtor ("Portfolio B"), on matters unrelated to the Debtor or its chapter 11 case. The sole member and manager of Portfolio B is BHF. Portfolio B is an Illinois not-for-profit entity that owns a portfolio of low-income housing on the south side of Chicago. Portfolio B is not a creditor or guarantor of the Debtor.

(e)     Clark Hill has rendered services in the past, is currently rendering services, and may render services in the future to BHF Chicago Housing Group C LLC., an affiliate of the Debtor ("Portfolio C"), on matters unrelated to the Debtor or its chapter 11 case. The sole member and manager of Portfolio C is BHF. Portfolio C is an Illinois not-for-profit entity that owns a portfolio of low-income housing on the south side of Chicago. Portfolio C is not a creditor or guarantor of the Debtor.

(f)     Clark Hill has rendered services in the past, is currently rendering services, and may render services in the future to 2017 IAVF Windy City Fox Run, LLC, 2017 IAVF Windy City Parkside LLC, 2017 IAVF Windy City Shaddle, LLC, and 2017 IAVF Windy City Villabrook LLC (collectively, "Portfolio D"). The sole member and manager of Portfolio D is BHF. Portfolio D consists of Illinois not-for-profit entities that own portfolios of low-income housing on the south side of Chicago. Clark Hill currently represents Portfolio D in litigation against Paperstreet Properties ("Paperstreet"), the former property manager for Portfolio D. Paperstreet was also the former property manager for the Debtor and Paperstreet is a creditor of the Debtor. The Debtor may hold the same or similar claims as Portfolio D against Paperstreet. Clark Hill also represents Portfolio D in other matters unrelated to the Debtor or its chapter 11 case. Portfolio D is not a creditor or guarantor of the Debtor.

(g)     Clark Hill has rendered services in the past, is currently rendering services, and may render services in the future to 2018 Blue Island LLC, an affiliate of the Debtor ("Portfolio E"). The sole member and manager of Portfolio E is BHF. Portfolio E is an Illinois not-for-profit entity that owns a portfolio of low-income housing on the south side of Chicago. Clark Hill currently represents Portfolio E in litigation against Paperstreet, the former property manager for Portfolio E. Paperstreet was also the former property manager for the Debtor and Paperstreet is a creditor of the Debtor. The Debtor may hold the same or similar claims as Portfolio E against

3

Paperstreet.  Clark Hill also represents Portfolio E in other matters unrelated to the Debtor or its chapter 11 case.  Portfolio E is not a creditor or guarantor of the Debtor.

(h)     BHF is the sole member of Portfolio B, Portfolio C, Portfolio D and Portfolio E (collectively, the "Affiliated Entities").  None of the assets of the Debtor or any Affiliated Entities are cross-collateralized with any asset of any other Affiliated Entities.  Neither the Debtor nor BHF is a guarantor for any of the Affiliated Entities.

(i)     In early to mid-2019, in order to finance rehabilitation and repair cost incurred by the Debtor, Portfolio D and E made unsecured loans to the Debtor.  Specifically,

1. 2018 Blue Island LLC loaned the Debtor $549,909.22
2. 2017 IAVF Windy City Foxrun LLC loaned the Debtor $222,638.41
3. 2017 IAVF Windy City Shaddle LLC loaned the Debtor $67,663.96
4. 2017 IAVF Windy City Villabrook LLC loaned the Debtor $85,589.99
5. 2017 IAVF Windy City Parkside LLC loaned the Debtor $41,808.24

On or about January 30, 2020, while Portfolio D and E were represented by separate counsel, Portfolio D and E entered into an agreement waiving their claims against the Debtor.  The waiver agreement is without prejudice to the rights of the Portfolio D bond trustee and the Portfolio E bond trustee (in both cases UMB, N.A. as the duly-appointed and acting successor trustee (also the "Trustee") to assert claims against the Debtor.  Clark Hill did not represent either Portfolio D or Portfolio E in connection with the 5 separate unsecured loans described above or the waiver.

(j)     UMB Bank, N.A. ("UMB") became successor Trustee of Portfolio A in May 2019.  Prior to May 2019, Wilmington Trust served as the Trustee of Portfolio A.  At the time of its appointment, UMB was aware that Clark Hill represented the Debtor and that Clark Hill has rendered services in the past, is currently rendering services, and may render services in the future to UMB on matters unrelated to the Debtor or its chapter 11 case.  UMB consented to Clark Hill's representation of the Debtor in this case.  No attorney representing the Debtor has represented UMB on any matters and no attorney representing UMB has represented the Debtor.  Clark Hill has also instituted a conflicts wall to ensure that no attorneys representing the Debtor or UMB communicate while the Debtor's bankruptcy case is

4

pending.   All of the services Clark Hill has rendered in the past, is
rendering, and may render in the future to UMB originate from and are
carried out in Texas, and all of these services rendered are to UMB in its
capacity as a national bank.   Clark Hill has not previously and is not
providing any services related to UMB in its capacity as an indenture
trustee.   For 2019, the last full year in which Clark Hill rendered services to
UMB, the total revenue Clark Hill derived from UMB was approximately
$920,000, or approximately 0.3% of Clark Hill's annual revenue.

(k)   Clark Hill has rendered services in the past, is currently rendering services,
and may render services in the future to TIAA Commercial Finance, Inc.
f/k/a Everbank Commercial Finance, Inc. ("TIAA") on matter unrelated to
the Debtor or its chapter 11 case.   No attorney representing the Debtor has
represented TIAA on any matters, and the Debtor will hire special counsel
in the event the Debtor and TIAA are adverse and an action is to be
brought against TIAA.   The Debtor owes TIAA $81.22.

(l)   Clark Hill has rendered services in the past to Office Depot and RealPage,
Inc., unsecured creditors of the Debtor, on matters unrelated to the Debtor
or its chapter 11 case.   Clark Hill does not currently have any active
matters with Office Depot or RealPage, Inc.

(m)   On February 3, 2020, Daniel V. Kinsella joined Clark Hill PLC as senior
counsel in the firm's Labor & Employment group in the Chicago office.
Mr.   Kinsella   represents   Lakeshore   Recycling   Systems   LLC
("Lakeshore") solely with respect to its labor and employment matters,
has never represented Lakeshore on any matters related to the Debtor, and
will not represent the Debtor in this matter.

I will supplement this Declaration if I become aware of any additional connections.

8.     Clark Hill and the Debtor entered into an engagement letter that set forth the
terms and services related to Clark Hill's representation of the Debtor and Clark Hill's
compensation (the "Engagement Letter"). Pursuant to Federal Rule of Bankruptcy Procedure
2016(b) and Local Rule 2016-1, a copy of the Engagement Letter is attached as **Exhibit 1**.

9.     The professional services that Clark Hill expects to render to the Debtor include,
but shall not be limited to, the following:

(a)   providing legal advice with respect to the Debtor's powers and duties as
debtors in possession in the management of their assets;

5

(b)     providing legal advice with respect to the Debtor's obligations to taxing bodies and other government agencies;

(c)     pursuing the sale of the Debtor's property, including, without limitation, approval of bid procedures, review and evaluation of alternative bids, negotiations with parties, administration of an auction, appearance at sale hearings;

(d)     providing all real estate services related to the transaction, sale, and transfer of the Debtor's assets;

(e)     pursuing confirmation of a plan and approval of a disclosure statement;

(f)     preparing, on behalf of the Debtor, all necessary applications, motions, answers, orders, reports and other legal papers as required by applicable bankruptcy or non-bankruptcy law, as dictated by the demands of the cases, or as required by the Court, and representing the Debtor in any hearings or proceedings related thereto;

(g)     appearing in Court and protecting the interests of the Debtor before the Court; and

(h)     performing all other legal services for the Debtor which may be necessary and proper in this case.

10.     Clark Hill intends to apply for compensation and reimbursement for expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court and other procedures that may be fixed by this Court.

11.     The Trustee[1] and the Debtor have negotiated and agreed to a carve-out from the Trustee's collateral, which consists of (i) the Professional Fee Carve-Out; and (ii) the Closing Cost Surcharge, as detailed in the attached **Exhibit 2**. Prior to commencing this case, the Debtor entered into a "Stalking Horse" agreement with PRE Holdings, 14 LLC ("PRE"), an unrelated third party, to acquire the Debtor's assets, subject to higher and better offers.  PRE made a

---

[1] The "Trustee" shall mean UMB Bank, N.A., the duly-appointed and acting successor trustee under the indentures for the Multifamily Housing Revenue Bonds: Shoreline Portfolio Project (Series 2016A, Taxable Series 2016B, Subordinate Series 2016C).

$150,000 earnest money deposit in connection with that agreement (the "Earnest Money"). PRE

received $50,000 of the Earnest Money pursuant to a promissory note between BHF and PRE.

The Trustee consented to the Debtor using $50,000 of Earnest Money to pay Clark Hill prior to

the Petition Date, to fund the initial pre-filing, filing fees, and costs of this case (the "Retainer").

*See* Exhibit A. If PRE is the successful bidder for the Debtor's assets, the Earnest Money will be

a credit towards the closing costs, with PRE repaying $50,000 to BHF. Neither the Debtor nor

Clark Hill has an obligation to refund the Retainer. To the extent the Retainer was not used prior

to commencing this case, it will be available to pay post-petition fees and expenses that are

approved by this Court.

12.     As of the Petition Date, there was $7,332.50 remaining of the Retainer. The

remainder of the Retainer is being held in one of Clark Hill's trust accounts and will not be

applied to post-petition fees and costs until further order of the Court.

13.     Clark Hill has advised the Debtor that the current hourly rates applicable

to the principal attorneys proposed to represent the Debtor are as follows:

| | | |
|---|---|---|
| (a) | Scott N. Schreiber | $775.00 per hour |
| (b) | Kevin H. Morse | $650.00 per hour |
| (c) | Chad M. Poznansky | $580.00 per hour |
| (d) | Reginald D. Cloyd | $425.00 per hour |

Other persons employed by Clark Hill will render services to the Debtor as needed. Generally,

Clark Hill's hourly rates are in the following ranges: Attorneys: $350.00 - $990.00 per hour and

Paralegals: $150.00 – $275.00 per hour. The Debtor understands that the hourly rates set forth

above are subject to periodic adjustments in the ordinary course of Clark Hill's business, as the

market may require or due to other conditions.

I declare under penalty of perjury the foregoing is true and correct to the best of my

knowledge, information and belief.

Dated: February 19, 2020

_____
SCOTT N. SCHREIBER

223091633.10
223091633.v9

# Exhibit 1

# CLARK HILL

Clark Hill
130 East Randolph Street
Suite 3900
Chicago, IL  60601
T 312.985.5900
F 312.985.5999

Scott N. Schreiber
T 312-985-5595
F 312-985-5984
Email: SSchreiber@ClarkHill.com

clarkhill.com

October 3, 2019

BY ELECTRONIC MAIL

Lindran Properties LLC
c/o Better Housing Foundation, Inc., Manager
4 Dunbar Road
Palm Beach Gardens, Florida 33418
Email: abelew@consiliumcp.com

  **Re:  Engagement Letter for Legal Services – Lindran Properties LLC**

Dear Andy:

  This letter serves to record the terms of our engagement to represent Lindran Properties LLC, as client (the "Company"), as bankruptcy counsel in connection with the restructuring of the Company's secured debt and, if necessary, filing of a chapter 11 bankruptcy case for the Company. We agree that the scope of our services in the matter is as follows: (1) to negotiate with the Company's secured creditors for the restructuring of all secured debt; (2) to provide legal advice with respect to the Company's powers and duties as a debtor-in-possession in the management and disposition of its assets; (3) to assist the Company in preparing or amending, if applicable, the bankruptcy schedules and statement of financial affairs and other ordinary and customary documents relating to a Chapter 11 case; (4) to prepare all necessary applications, motions, answers, order, reports, and other legal papers, including, without limitation, procedures and agreements for the sale of all or substantially all of the Company's assets, as dictated by the demand of the chapter 11 case; (5) to pursue confirmation of a plan and approval of a disclosure statement; and (6) to perform all other legal services for the Company that may be necessary and proper in the chapter 11 case.

  Before performing any of the services set forth above, it is our firm's policy to require an advance payment retainer.  The Company has paid an initial "advance payment retainer" in the amount of $25,000.00 (the "Initial Retainer") for the services set forth above.  The Company agrees that the Initial Retainer may be supplemented from any earnest money deposit received pursuant to an executed Letter of Intent, for the purchase of assets, and approved by the Company's secured creditors (collectively, the "Advance Payment Retainer").  The Advance Payment Retainer shall be treated as earned upon receipt and deposited into the firm's regular operating or general business



222449377.1

Lindran Properties LLC
October 3, 2019
Page 2

account. The amount of the Advance Payment Retainer does not represent the total fees and costs anticipated to complete this matter, but it shall be applied against our invoices as they are issued. If there is a balance remaining after full payment of our fees and costs; however, the balance must be paid by the Company as set forth in this agreement or as authorized by the Bankruptcy Court. For the avoidance of doubt, all retainers received constitute advanced payment retainers.

Our fees in this matter are based on hours spent by lawyers and other professionals necessary to produce the work product. Our minimum billing increment is .1 hour. At this time, our lawyer billing rates range from $235.00-$950.00 an hour, and paralegal rates range from $140.00-$235.00 per hour. These rates may be adjusted periodically to reflect the experience and expertise of our professionals. Kevin Morse, Chad Poznansky, and I will be the principal attorney contacts in this matter. My hourly rate is $775.00, Kevin's hourly rate is $650.00, and Chad's hourly rate is $525.00. We will also utilize the services of other attorneys in the firm, as needed, whose billing rates range between $310.00 and $950.00 per hour.

We will commence work on this matter upon receipt of the executed copy of this engagement letter and initial Advanced Payment Retainer. This letter is supplemented by our Standard Terms of Engagement for Legal Services, attached, which are incorporated in this letter and apply to this matter and other matter(s) for which you engage us.

If you agree that this letter provides acceptable terms for our engagement in this matter, please sign and return a copy to me.

We look forward to working with you.

Sincerely,

CLARK HILL PLC

Scott N. Schreiber

SNS:bdl
Enclosure

[SIGNATURE FOLLOWS]

CLARK HILL
222449377.1

Lindran Properties LLC
October 3, 2019
Page 3


        LINDRAN PROPERTIES LLC accepts and agrees to be bound by the foregoing.


               **LINDRAN PROPERTIES LLC**
               **By: Better Housing Foundation, Inc.**


By: _*Andrew Belew*_____
        Andrew Belew, President


Date: _10/15/2019_____

# STANDARD TERMS OF ENGAGEMENT
## FOR LEGAL SERVICES

This statement provides the standard terms of our engagement as your lawyers.  Unless modified in writing by mutual agreement, these terms will be an integral part of our agreement with you.  Therefore, we ask that you review this statement carefully and contact us promptly if you have any questions.

### GENERAL RIGHTS  AND RESPONSIBILITIES OF CLIENTS OF THE FIRM

A client of the firm has the right to: (A) expect competent representation by the firm; (B) determine the purposes to be served by the legal representation, so long as those purposes are legal and do not violate the firm's obligation to the profession or to the judiciary; (C) be kept reasonably informed about the status of the matter and have the firm respond promptly to reasonable requests for information; and (D) terminate the representation at any time, with or without cause, subject to the obligation for payment of legal services provided and costs incurred by the firm.

A client of the firm has the responsibility to: (A) obey all orders issued by a court or other tribunal concerning your matter; (B) be candid and truthful with the firm and the court or other tribunal; (C) pay the firm as provided by this agreement and by any other agreements with the firm; and (D) respond promptly to the firm's requests for information.  A client may not: (A) demand that the firm use offensive tactics or treat anyone involved in the legal process with anything but courtesy and consideration; (B) demand any assistance which violates the Rules of Professional Conduct; or (C) pursue or insist upon a course of action which the firm reasonably believes to be illegal, fraudulent, offensive or unwise.  The firm may terminate this agreement for reasons permitted under the Rules of Professional Conduct.

### OBLIGATIONS OF A LAWYER

All lawyers are required to observe and uphold the law, including applicable court rules; and are governed by Rules of Professional Conduct that pertain to our relationship with a client, with third persons, other professionals and the courts.  All of these laws and rules apply to our representation of you, and we welcome your inquiry about them.

### WHOM WE REPRESENT

The person or entity whom we represent is the person or entity identified in our engagement letter and does not include any affiliates or related parties of such person or entity, such as parent companies, subsidiaries, sibling entities, and/or other affiliates; or employees, officers, directors, shareholders of a corporation, partners of a partnership, members of an association or limited liability company, and/or other constituents of a named client unless our engagement letter expressly provides otherwise.



222449377.1

### THE SCOPE OF OUR WORK

You should have a clear understanding of the legal services we will provide.  Any questions that you have should be dealt with promptly.

We will at all times act on your behalf to the best of our ability.  Any expressions on our part concerning the outcome of your legal matters are expressions of our best professional judgment, but are not promises or guarantees to achieve a specific result.  Such opinions are necessarily limited by our knowledge of the facts and are based on the state of the law at the time they are expressed.  Your obligation to pay our fees and other charges as provided in this letter is not in any way contingent upon a result or results in the matter.

Our attorney-client relationship will be considered ended upon the earliest of (a) our completion of services in the matter(s) for which you have engaged us, (b) notification by you to us that you desire to terminate such services, or (c) notification by the firm of termination of our attorney-client relationship.

### WHO WILL PROVIDE THE LEGAL SERVICES

Customarily, each client of the firm is served by a principal attorney contact.  The principal attorney should be someone in whom you have confidence and with whom you enjoy working.  You are free to request a change of principal attorney at any time.  Subject to the supervisory role of the principal attorney, your work or parts of it may be performed by other lawyers and paralegals in the firm.  Such delegation may be for the purpose of involving lawyers or paralegals with special expertise in a given area or for the purpose of providing services on an efficient and timely basis.

### PRESERVATION OF EVIDENCE AND COMMUNICATION PROTOCOL IN LITIGATED MATTERS

All evidence of any nature that is arguably relevant to this matter, including but not limited to documents (whether hard copy or electronic) and other physical evidence, must be preserved.  Moreover, scheduled routine destruction of any stored records (whether hard copy or electronic) must be suspended immediately until after this matter is concluded.  Failure to do so may result in sanctions by a court or tribunal.

In order to preserve the attorney-client privilege that attaches to our communications, it is important that all future oral communications about this matter occur only in the presence of a Clark Hill attorney.  Further, all written communications about the matter should be directed to a Clark Hill attorney.   You recognize that, while convenient and sometimes necessary, communications transmitted by internet, mobile and other electronic means may not be entirely secure.   Therefore, in communicating by such means you accept the risks that such communications may not be protected by the attorney-client privilege, and we agree that no party will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any such communications due to any reason beyond that party's reasonable control.



222449377.1

### HOW FEES WILL BE SET

Unless our engagement letter provides otherwise, our fees will be charged on an hourly basis, *i.e.,* time expended multiplied by the hourly rates of our lawyers and other professionals. Among the factors we consider in determining the staffing of the matter and the fees charged are:

- The novelty and complexity of the issues presented, and the skill required to perform the legal services;•   The fees customarily charged in the community for similar services and the value of the services to you;

- The amount of money or value of property involved;

- The time constraints imposed by you as our client and other circumstances, such as an emergency closing, the need for injunctive relief from court, or substantial disruption of other office business;

- The experience, reputation and expertise of the lawyers performing the services.

We will keep accurate records of the time we devote to your work, including conferences (both in person and over the telephone), negotiations, factual and legal research and analysis, document preparation and revision, travel on your behalf, and other related matters.  We record our time in tenths of an hour.

The hourly rates of our lawyers and other professionals are adjusted periodically to reflect current levels of legal experience, changes in overhead costs, and other factors.

We are often requested to estimate the amount of fees and costs likely to be incurred in connection with a particular matter.  Whenever possible we will respond to your request by furnishing an estimate based upon our professional judgment, but always with a clear understanding that it is not a maximum or fixed fee quotation.  The ultimate cost frequently is more or less than the amount estimated.

### RETAINER AND TRUST DEPOSITS

Clients of the firm are commonly asked to deposit a retainer with the firm.  Unless otherwise agreed, the retainer deposit will be credited toward your unpaid invoices, if any, at the conclusion of services.  While the retainer is on deposit, you grant us a security interest in such funds.  At the conclusion of our legal representation or at such time as the deposit is unnecessary or is appropriately reduced, the remaining balance or an appropriate part of it will be returned to you.

Deposits which are received to cover specific items will be disbursed as provided in our agreement with you, and you will be notified from time to time of the amounts applied or withdrawn.  Any amount remaining after disbursement will be returned to you.

All trust deposits we receive from you will be placed in a trust account for your benefit. Your deposit will be placed in a pooled account unless you request a segregated account.  By law,



222449377.1

interest earned on the pooled account is payable to a charitable foundation.  Interest earned on a segregated trust account will be added to the deposit for your benefit and will be includable in your taxable income.

### EXPENSES

Our invoices will reflect expenses for items such as long distance telephone, facsimiles, document copying, printing and scanning, messenger and special delivery services, computerized legal and other research systems, travel, and filing and recording fees, and may include charges for extraordinary items (including secretarial overtime) that may be generated by the particular demands of the project involved.

If outside services such as court reporters, mediators, investigators, expert witnesses, or photocopy services are retained or required, you will be responsible for paying for those services directly to the service providers.  Invoices may be sent by the provider directly to you, or we may forward their invoices to you for payment directly to the provider.  These invoices should be paid within 30 days of receipt.  We may advance certain expenses not exceeding $100.00, and require that our clients directly pay, or deposit with us funds to pay, expenses exceeding $100.00.

### FILES AND OTHER MATERIALS

Files generated in the matter will be retained by the firm as required by law, and thereafter may be retained or destroyed, at our discretion.  To the extent we retain them, we will provide you reasonable access to matter files in accordance with applicable law, excluding firm files (firm administrative records, time and expense reports, personnel and staffing materials, accounting records, and internal lawyers' work product, *e.g.,* drafts, notes, internal memoranda, legal research, and factual research).  Matter files to which you are given access may be reproduced at your request and at your expense.  We reserve the right to make and retain copies of all documents generated or received by us in connection with the matter.  After our engagement in this matter ends, upon your request and at your expense we will return any property you have entrusted to us, unless there is a balance on your account.  If there is a balance on your account, the firm will assert a retaining lien on such property to the extent allowed by law.  If you have not requested return of such property within a reasonable time after our engagement in the matter ends, we may retain or destroy such property at our discretion.

### TERMINATION

You may terminate our representation at any time, with or without cause, by notifying us. Your termination of our services will not affect your responsibility for payment of legal services rendered, and costs, charges and expenses incurred before termination and in connection with an orderly transition of the matter.

The Rules of Professional Conduct list several types of conduct or circumstances that require or allow us to withdraw from representing a client, including, for example:  persistence in a course of conduct which we reasonably believe to be criminal or fraudulent, insistence upon pursuing an objective which we consider to be repugnant or imprudent, failure of a substantial



nature to fulfill an obligation after reasonable warning that it will result in our withdrawal, or other good cause.

## BILLING ARRANGEMENTS AND TERMS OF PAYMENT

Our invoices will report the hours and rates for attorneys and other professionals on the matter, and describe the work performed.  Additional charges and expenses will be itemized.  Unless otherwise provided in our engagement letter, we will provide you with a bill on a monthly basis.  Payment is due on receipt.  Any balance unpaid after 30 days of the date of the invoice shall accrue interest at the rate of seven percent (7%) per annum.  Payments shall be applied first to collection costs and expenses, then to accrued interest, if any, and then to the unpaid invoice amount.

We will give you notice if your account becomes delinquent, and you agree to bring the account or the retainer deposit current.  If the delinquency continues and you do not arrange satisfactory payment terms, we may withdraw from the representation and pursue collection of your account either directly or through a third party service.  We may also request permission of any court in which we have filed an appearance on your behalf to allow us to withdraw as your counsel, and you agree that non-payment of our fees is a valid basis for our request to so withdraw.  To the extent collection of your account becomes necessary, you agree that we may pursue collection through a third party collection service, and that, in addition to any unpaid balance and interest thereon, we will be entitled to recover all costs and expenses of collection, including reasonable attorney fees.

CLARK HILL

222449377.1

# Exhibit 2

"Professional Fees Carve-Out" shall consist of the first $300,000 paid out from the proceeds of the sale of the Property[1]  The Professional Fees Carve-Out, pursuant to 11 U.S.C. § 506(c), shall not be subject to the liens of the Trustee or any other party asserting a lien in the proceeds of the sale, except with respect to any amount remaining after the payment of all professional fees and expenses as described herein.  The Professional Fees Carve-Out shall be used to pay all fees and expenses of all professionals employed by the Debtor, or any committee appointed during the Debtor's Chapter 11 Case, pursuant to 11 U.S.C. § 327 in the Bankruptcy Case, in addition to the U.S. Trustee Quarterly Fees, chapter 11 filing fees, copy costs and publication costs, subject to the caveats below.

The Debtor and the Trustee agree to renegotiate the Professional Fees Carve-Out in the event:

- the Debtor (solely at the direction of the Trustee) files any adversary complaint;

- the Debtor is required to respond to any adversary complaint filed by any other entity, comply with discovery commenced in an adversary proceeding, or go to trial on such adversary complaint;

- the Debtor (solely at the direction of the Trustee) files an appeal of any order entered by the Bankruptcy Court that affects the Debtor's ability to consummate a sale to a buyer;

- the Debtor is required to respond to an appeal filed by any party to any order entered by the Bankruptcy Court that affects the Debtor's ability to consummate a sale to a buyer; or

- the Debtor is required to file and or prosecute objections to any claim.

In addition to the Professional Fees Carve-Out, the Trustee agrees that the Debtor may surcharge the Trustee's collateral, pursuant to 11 U.S.C. § 506(c), to pay all normal and customary 'seller-side' closing costs (the "Closing Costs Surcharge").  Such seller-side costs typically include, but are not limited to, the seller's transfer taxes, title, escrow and wiring fees.  The Closing Costs Surcharge for the sale of the Property to PRE at the Purchase Price (as defined in the Agreement) shall not exceed $35,000; however, the Closing Costs Surcharge shall increase an additional $1,000 for every $100,000 the final purchase price exceeds the Purchase Price.  For example, if the Property is sold to an overbidder for $4,200,000, the Closing Costs Surcharge would be limited to $38,000.

The Professional Fees Carve-Out does not include the $50,000 Earned Earnest Money that, pursuant to 11 U.S.C. § 506(c) and the execution of the Agreement, shall be paid to Debtor's attorneys prior to the Bankruptcy Case and in addition to the Professional Fees Carve-Out.

---

[1]  All capitalized terms not otherwise defined herein shall have the meaning ascribed in the Motion.