**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| LINDRAN PROPERTIES, LLC (SHORELINE) ) | Case No. 20-02834 |
| ) | |
| Debtor. ) | Hon. Jack B. Schmetterer |
| ) | |
| ) | |

**SUPPLEMENTAL DECLARATION OF SCOTT N. SCHREIBER PURSUANT TO BANKRUPTCY RULES 2014 AND 2016 IN SUPPORT OF THE APPLICATION TO AUTHORIZE THE RETENTION AND EMPLOYMENT OF CLARK HILL PLC AS BANKRUPTCY COUNSEL**

_____

I, Scott N. Schreiber, hereby declare:

1. I am an attorney duly licensed to practice before the United States District Court for the Northern District of Illinois and a member of the law firm of Clark Hill PLC, located at 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601.

2. I respectfully submit this Supplemental Declaration in connection with the application of the above-captioned debtor and debtor in possession (the "Debtor") to retain and employ Clark Hill PLC and the members, attorneys, and paralegals of Clark Hill PLC (collectively, "Clark Hill") as its bankruptcy counsel.

3. I have personal knowledge of the matters set forth herein. If called upon to testify, I could testify competently to the facts contained herein.

**I.    Supplemental Disclosure**

4. As of the filing of the initial Schreiber Declaration [Docket No. 51], Clark Hill had previously rendered services to RealPage, Inc., a Texas corporation ("RealPage"), and did not have any active matters with RealPage. Schreiber Declaration, at ¶ 7(l).  On March 5, 2020,

1

one of the Texas offices of Clark Hill was approached to again represent RealPage in matters unrelated to this Chapter 11 case. Clark Hill's conflict check process turned up that Realpage One, based in Richardson, Texas, is listed as a creditor and owed $335.18 from the Debtor. No attorney representing the Debtor has ever represented RealPage. If Clark Hill is retained to represent RealPage in the unrelated matter, the Debtor will hire special counsel in the event an action is to be brought related to the $335.18 claim.

## II.    Response in Opposition to US Trustee Objection

5.    As set forth in my initial declaration, prior to the commencement of the Debtor's chapter 11 case, BHF was served with a subpoena from the Securities and Exchange Commission seeking records related to the events that preceded current ownership's involvement in BHF and its affiliates. <u>Schreiber Declaration</u>, at ¶ 7(b). Clark Hill has and continues to represent BHF in that investigation. *Id.* Clark Hill has fully responded to the SEC subpoena and has not taken any action on the matter since providing the requested documents to the SEC on February 7, 2020. If, someday in the future, the SEC either implicates or names the Debtor, which appears unlikely given the scope of the subpoena, Clark Hill will supplement its disclosures as required by Bankruptcy Rule 2014.

6.    Prior to the commencement of the bankruptcy case, Clark Hill rendered services to the Debtor. <u>Schreiber Declaration</u>, at ¶ 7(a) [Docket No. 51]. This representation included preparation for filing of the bankruptcy case and negotiation of the stalking horse bid. Clark Hill also represented the Debtor in litigation against the Debtor's former principals in the United States District Court – Northern District of Illinois that was dismissed prior to the Bankruptcy Case. *See* Statement of Financial Affairs, at Exhibit 7 (*Lindran Properties LLC v. DeAngelis, et al.*, No. 18-cv-07070). Clark Hill represented the Debtor in District Court litigation against the

2

Gill Group. *See* Statement of Financial Affairs, at Exhibit 7 (*Lindran Properties LLC v. Gill Group, et al.*, No. 17-cv-09051). The Gill Group litigation was settled in September 2019 for $75,000, and a total of $60,000 of the settlement proceeds were paid to Clark Hill on September 11, 2019 ($22,500) and September 27, 2019 ($37,500) to satisfy a portion of Clark Hill's outstanding litigation fees and costs. Clark Hill also represented the Debtor in Housing Court cases; however, Clark Hill withdrew its representation in those cases in the Summer 2019, following the appointment of the Receiver.

7. Clark Hill wrote off all outstanding fees and costs owed from the Debtor prior to the receipt of the Retainer. Clark Hill is owed outstanding fees and costs from its services rendered to Portfolio B, Portfolio D, and Portfolio E on matters unrelated to the Debtor or its Chapter 11 case.

8. Wilmington Trust was the indenture trustee until the Summer 2019, when UMB became the successor Indenture Trustee. Clark Hill conducted its loan and lien analysis in early 2019, when Wilmington Trust was the indenture trustee. That loan analysis was completed several months before UMB was appointed successor trustee and confirmed the extent and priority of the trustee's liens.

9. Prior to filing this case, Clark Hill undertook an in-depth review of likely professional services necessary to represent the Debtor. This review led Clark Hill to negotiate the use of $50,000 prepetition from the Earnest Money and a $300,000 post-petition carve-out for all administrative claims. These amounts were intended to cover all fees and costs necessary in the Chapter 11 case.

10. However, in the event certain unexpected circumstances arose, Clark Hill reserved the right to renegotiate the Professional Fee Carve-Out. There were five (5) possible,

3

yet unexpected, circumstances in which the Indenture Trustee would agree to renegotiate (*i.e.*, increase) the Professional Fee Carve-Out. These were limited to the following unexpected events:

    a. the Debtor (solely at the direction of the Trustee) files any adversary complaint;

    b. the Debtor is required to respond to any adversary complaint filed by any other entity, comply with discovery commenced in an adversary proceeding, or go to trial on such adversary complaint;

    c. the Debtor (solely at the direction of the Trustee) files an appeal of any order entered by the Bankruptcy Court that affects the Debtor's ability to consummate a sale to a buyer;

    d. the Debtor is required to respond to an appeal filed by any party to any order entered by the Bankruptcy Court that affects the Debtor's ability to consummate a sale to a buyer; or

    e. the Debtor is required to file and or prosecute objections to any claim.

The inclusion of these five (5) events was solely to permit the *possible* increase of the Professional Fee Carve-Out, in the event these unexpected and unbudgeted events occurred in the bankruptcy case. These unexpected events were not, as the US Trustee asserts, "for the Indenture Trustee to pay Clark Hill's legal fees.".

    11. Clark Hill and the Indenture Trustee have agreed to rephase the language of the Professional Fee Carve-Out so that if Clark Hill requires an increased surcharge, the Debtor will file a motion before the Court, on notice and hearing. The revised language of the Professional Fee Carve-Out is attached hereto as **Exhibit 1**.

    12. On October 3, 2019, Clark Hill and the Debtor entered into an engagement letter that set forth the terms and services related to Clark Hill's representation of the Debtor and Clark Hill's compensation (the "Engagement Letter"). A copy of the Engagement Letter was attached as Exhibit 1 to the Schreiber Declaration [Docket No. 51]. The Engagement Letter

223479549.v1

disclosed that the Debtor was to pay Clark Hill an "advance payment retainer" of $25,000. That advance payment retainer was paid to Clark Hill in October 2019.

13.   Clark Hill is familiar with the Property and all parties-in-interest in the bankruptcy case having previously represented the Debtor in related actions and negotiated the sale of the Property. Clark Hill has also already commenced the marketing of the Property [Docket No. 80-81]. Clark Hill has worked extensively with the City of Chicago since early 2019 to remedy the Property. More recently, Clark Hill has worked with the City of Chicago and Receiver to resolve their outstanding issues with respect to the sale of the Property and protection of their interests. Clark Hill has scheduled further negotiations with the City of Chicago, Receiver, and Indenture Trustee to resolve the Court's concerns over the sale procedures. There is a meeting set for Monday, March 9, 2020 at the offices of Clark Hill. The US Trustee has been unwilling to participate in these negotiations or attend any meeting.

I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:   March 5, 2020

_____
SCOTT N. SCHREIBER

5

223479549.v1

# Exhibit 1

**EXHIBIT 1**

"Professional Fees Carve-Out" shall consist of the first $300,000 paid out from the proceeds of the sale of the Property[1] The Professional Fees Carve-Out, pursuant to 11 U.S.C. § 506(c), shall not be subject to the liens of the Trustee or any other party asserting a lien in the proceeds of the sale, except with respect to any amount remaining after the payment of all professional fees and expenses as described herein.  The Professional Fees Carve-Out shall be used to pay all fees and expenses of all professionals employed by the Debtor, or any committee appointed during the Debtor's Chapter 11 case, pursuant to 11 U.S.C. § 327 in the Bankruptcy Case, in addition to the U.S. Trustee Quarterly Fees, chapter 11 filing fees, copy costs and publication costs, subject to the caveats below.

The Debtor shall file a motion with the Bankruptcy Court to seek an increase of the Professional Fees Carve-Out, pursuant to 11 U.S.C. § 506(c), in the event that:

- the Debtor files any adversary complaint;

- the Debtor is required to respond to any adversary complaint filed by any other entity, comply with discovery commenced in an adversary proceeding, or go to trial on such adversary complaint;

- the Debtor files an appeal of any order entered by the Bankruptcy Court that affects the Debtor's ability to consummate a sale to a buyer;

- the Debtor is required to respond to an appeal filed by any party to any order entered by the Bankruptcy Court that affects the Debtor's ability to consummate a sale to a buyer; or

- the Debtor is required to file and or prosecute objections to any claim.

In addition to the Professional Fees Carve-Out, the Trustee agrees that the Debtor may surcharge the Trustee's collateral, pursuant to 11 U.S.C. § 506(c), to pay all normal and customary 'seller-side' closing costs (the "Closing Costs Surcharge").  Such seller-side costs typically include, but are not limited to, the seller's transfer taxes, title, escrow and wiring fees.  The Closing Costs Surcharge for the sale of the Property for $3,900,000 (the "Purchase Price") to PRE shall not exceed $35,000; however, the Closing Costs Surcharge shall increase an additional $1,000 for every $100,000 the final purchase price exceeds the Purchase Price.  For example, if the Property is sold to an overbidder for $4,200,000, the Closing Costs Surcharge would be limited to $38,000.

The Professional Fees Carve-Out does not include the $50,000 Earned Earnest Money that, pursuant to 11 U.S.C. § 506(c) and the Trustee's execution of the Agreement, shall be paid to Debtor's attorneys prior to the Bankruptcy Case and in addition to the Professional Fees Carve-Out.

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed in the Application.