## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LINDRAN PROPERTIES, LLC (SHORELINE) | ) | Case No. 20-02834 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |
| | ) | |
| | ) | |
| | _ ) | |

## ORDER (A) APPROVING BID PROCEDURES AND BID PROTECTIONS, (B) APPROVING NOTICE OF THE SALE, (C) SCHEDULING A SALE HEARING AND, IF NECESSARY, AN AUCTION, AND (D) GRANTING RELATED RELIEF

This matter coming to be heard on the motion (the "Motion") of Lindran Properties, LLC (Shoreline), debtor and debtor in possession (collectively, "Debtor"), for the entry of an order, (a) authorizing and approving the bid procedures in connection with the sale of the Property[1] free and clear of all liens, claims, and encumbrances; (b) approving the form and manner of notice of an auction and sale hearing with respect to the sale (the "Sale"); (c) approving the notice of the assumption and assignment of executory contracts and unexpired leases; (d) scheduling such auction (if necessary) and sale hearing; (e) approving the selection of a stalking horse bidder (the "Stalking Horse Bidder"); and (f) granting related relief; it appearing that the relief requested is in the best interests of the Debtors' bankruptcy estates, its creditors, and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to

---

[1] The "Property" means the improved real property located in Chicago, Illinois consisting of 264 low income housing units in 13 buildings as more fully described in the Agreement.

1

147565669.1

223588693.v3

28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted as set forth herein. All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

2.    All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.    Bid Procedures, Auction and Related Relief**

3.    The Bid Procedures, as attached to the Sale Notice as **Exhibit A** and incorporated herein, are hereby approved in their entirety. Any party desiring to bid on the Property shall comply with the Bid Procedures.

**II.    Stalking Horse Bid**

4.    The Debtor has entered into the Agreement with PRE Holdings 14, LLC as purchaser for the Property, and designates it as the "Stalking Horse Bidder" in accordance with the Bid Procedures. The Stalking Horse Bidder is approved.

5.    The Bid Protections are approved. The Debtor is authorized to pay the Bid Protections, as applicable, to the Stalking Horse Bidder out of the proceeds from any Alternative Transaction, pursuant to the Bid Procedures. The Bid Protections shall be paid from the proceeds of such transaction as a superpriority administrative expense claim senior to all other administrative expense claims, and prior to any recovery by the Trustee under Section 364(c)(1) of the Bankruptcy Code. For the avoidance of doubt, the Bid Protections shall only maintain superpriority administrative expense status against the proceeds of any Alternative Transaction

223588693.v3

and not against the Debtor's bankruptcy estate.

**III.    Receiver's Fees and Costs**

6.      Except for the Earnest Money, Break-Up Fee, and Expense Reimbursement[2], all liens, claims, encumbrances, and interests on the Property, including, without limitation, the asserted liens, claims, and encumbrances of the Receiver, the Trustee, and Paper Street Realty, LLC, shall attach to the proceeds from the Sale with the same force, effect, validity, and priority as such liens, claims, encumbrances, and interests had on such Property prior to the closing of the Sale, pursuant to applicable law and any order entered by the Court.

7.      For the avoidance of doubt, the Receiver's claim against the proceeds from the Sale shall include all fees and costs incurred by the Receiver with respect to the Property, including, without limitation, those reasonable attorneys' fees and costs incurred by the Receiver in the bankruptcy case (the "Receiver's Bankruptcy Fees"), to and including the closing of the Sale, notwithstanding whether such certificates have been filed with or approved by the Housing Court.[3]

8.      All Receiver's certificates issued after closing of the Sale, pursuant to 65 ILCS 5/11-31-2, and the Receiver's Bankruptcy Fees, shall attach to and constitute liens against the proceeds of the Sale of the same priority as such liens would have had against the Property if issued prior to closing. No proceeds of the Sale shall be distributed until: (a) order of the Bankruptcy Court; and (b) all Receiver's certificates for fees and costs incurred to and including

---

[2] The Debtor intends to file a motion for entry of an order to establish a carve-out from the sale proceeds by which all administrative priority claims, pursuant to 11 U.S.C. §§ 503(b) and 507(a)(2), shall receive a *pro rata* distribution of the proposed administrative claim carve-out pursuant to further order of the Court. The U.S. Trustee Quarterly Fees may be paid without further order of the Court.

[3] To the extent that any of the Receiver's Bankruptcy Fees are not approved by the Housing Court in connection with the Receiver's certificates, the Receiver reserves the right to assert an administrative priority claim for any Receiver's Bankruptcy Fees and such administrative priority claim shall be resolved prior to the distribution of any sale proceeds.

the closing of the Sale have been approved by the Housing Court, unless alternative arrangements are agreed to in writing by the City of Chicago, the Receiver, the Trustee, and the Debtor.

## IV.    Important Dates and Deadlines

9.    <u>Sale Notice, Auction and Sale Hearing</u>. The Sale Notice as attached hereto as **Exhibit 1** is approved. The Debtor shall serve a copy of the Sale Notice, including the Bid Procedures, on or before the date that is three (3) business days after entry of this Order, by first class mail on (a) the U.S. Trustee; (b) counsel to Trustee; (c) the Illinois Finance Authority; (d) counsel to the Stalking Horse Bidder; (e) all entities known to have expressed a bona fide interest in acquiring the Property; (f) any receiver(s) in possession of the Property; (g) the City of Chicago; (h) all creditors of Debtor; (i) all tenants at the Property; (j) all federal, state, and local taxing authorities, recording offices or any other governmental authorities that may have claims, contingent or otherwise, against the Debtor's estate, or that are parties to governmental approvals or permits, or that have a reasonably known interest in the relief requested by the Motion; (k) all contractual counterparties to the Executory Contracts; and (l) all parties who have filed appearances or requested notices through the Court's CM/ECF system. The Debtor shall file a certificate of service with respect to service of the Sale Notice and any and all other forms of marketing, including without limitation, any notice of publication.

10.    <u>Bid Deadline, Auction Date, and Objection Deadline</u>. The Bid Procedures shall govern the submission, receipt, and analysis of all Bids, and selection of the Successful Bidder relating to the proposed Sale of the Property, and dates and deadlines for any Auction or objections to the Sale. The following deadlines, as detailed in the Sale Notice and Bid Procedures, are applicable:

4

223588693.v3

(a)    The deadline by which all bids for the Property must be <u>actually received</u> shall  be
**June 1, 2020**;

(b)    If one or more Qualified Bids, in addition to the Stalking Horse Bid, is received
on or before the Bid Deadline, an Auction will be on **June 4, 2020**;

(c)    The Debtor shall file and serve a proposed order approving the Sale no later than
**June 8, 2020**; and

**(d)**    Objections, if any, to the Sale must be filed with the Court and served no later
than **June 11, 2020**

11.    <u>Sale Hearing</u>. The Sale Hearing shall commence on **June 16, 2020 at 11:00 a.m.**

before the Honorable Jack B. Schmetterer in Courtroom 682 in the United States Courthouse,

219 South Dearborn Street, Chicago, Illinois, or before any other judge who may be sitting in

682 place and stead. The Sale Hearing may be adjourned without further notice other than by

announcement in open Court or on the Court's calendar.

Date:   March 24th, 2020
         Chicago, Illinois                    _____
                                              United States Bankruptcy Judge

**Prepared By:**

Scott N. Schreiber (#06191042)
Kevin H. Morse (#06297244)
CLARK HILL PLC
130 East Randolph Street | Suite 3900
Chicago, Illinois 60601
T: (312) 985-5595
F: (312) 985-5984
sschreiber@clarkhill.com
kmorse@clarkhill.com

223588693.v3

**No Opposition to Entry of Order:**

PATRICK S. LAYNG
UNITED STATES TRUSTEE

THE CITY OF CHICAGO
Mark A. Flessner, Corporation Counsel

_/s/ Jeffrey Gansberg_
Jeffrey L. Gansberg, Attorney
OFFICE OF THE U.S. TRUSTEE
219 South Dearborn Street, Room 873
Chicago, Illinois 60614
T: (312) 886-3327
jeffrey.l.gansberg@usdoj.gov

_/s/ Charles A. King_
Mark A. Flessner
Corporation Counsel
Charles A. King
Assistant Corporation Counsel - Senior
CHICAGO DEPARTMENT OF LAW
121 N. LaSalle St., Suite 400
Chicago, Illinois 60602
T: (312) 742-0019
chuck.king@cityofchicago.org

UMB BANK NATIONAL ASSOCIATION,
NOT INDIVIDUALLY, BUT AS
SUCCESSOR TRUSTEE

COMMUNITY INITIATIVES, INC., AS
COURT-APPOINTED RECEIVER FOR THE
PROPERTY

_/s/ James W. Kapp III_
James W. Kapp, III  (#06239269)
Joseph M. Robinson Jr (#06328777)
MCDERMOTT WILL & EMERY
444 West Lake St.
Suite 4000 Chicago, Illinois 60606
JKapp@mwe.com
JMRobinson@mwe.com

_/s/ Steven R. Rappin_
Steven R. Rappin
Megan J. McGillivary
HAUSELMAN & RAPPIN, LTD.
29 East Madison Street, Suite 950
Chicago, Illinois 60602
T: 312-372-2020 Ext. 12
srappin@hrolaw.com

PRE HOLDINGS 14, LLC

_/s/ Eric Walker_
Eric Walker
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603
ewalker@perkinscoie.com

1

# Exhibit 1

## Sale Notice

2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LINDRAN PROPERTIES, LLC (SHORELINE) | ) | Case No. 20-02834 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |
| | ) | |
| _ ) | | |

## NOTICE OF BID PROCEDURES, AUCTION,
## AND SALE HEARING

**PLEASE TAKE NOTICE** that on February 11, 2020, Lindran Properties, LLC (Shoreline), debtor and debtor in possession (the "Debtor"), filed the *Debtor's Motion for Entry of (I) an Order (a) Approving Bid Procedures and Bid Protections in Connection with the Sale of Substantially All of the Debtor's Assets Free and Clear of all Lien, Claims, and Encumbrances, (b) Approving the Form and Manner of Notice, (c) Approving Notice of the Assumption and Assignment of the Executory Contracts and Unexpired Leases; (d) Scheduling a Sale Hearing and, If Necessary, an Auction, (e) Approving the Stalking Horse Bid, and (f) Granting Related Relief; and (II) an Order (a) Approving the Purchase and Sale Agreement, (b) Authorizing the Sale of the Property Free and Clear of All Liens, Claims, Encumbrances, and Interests, (c) Authorizing the Assumption and Assignment of the Executory Contracts and Unexpired Leases, and (d) Granting Related Relief* (the "Motion")[1] with the United States Bankruptcy Court for the Northern District of Illinois (the "Court") seeking, among other things, entry of an order authorizing and approving: (a) the procedures for the sale of the Property[2] free and clear of liens, claims, interests, and encumbrances; (b) notice of the assumption and assignment of the designated executory contracts; (c) a hearing for the approval of the Sale and, if necessary, an auction; and (d) approving the Stalking Horse Bid.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has entered into a stalking horse agreement for the sale of the Property and is soliciting higher and better offers for the purchase of the Property consistent with the Bid Procedures (the "Bid Procedures") approved by the Court by entry of an order on March_, 2020 [Docket No. ● ]_(the "Bid Procedures Order"). **All interested bidders should carefully read the Bid Procedures**. A copy of the Bid Procedures is attached hereto as **Exhibit A**.

---

[1] All capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

[2] The "Property" means the improved real property located in Chicago, Illinois consisting of 264 low income housing units in 13 buildings as more fully described in the Agreement.

1

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, and any exhibits thereto, including the Bid Procedures Order, the Agreement, and the proposed Sale Order, are available: (a) upon request to counsel for the Debtor by e-mailing kmorse@clarkhill.com or by calling (312) 985-5556; or (b) for a fee via PACER by visiting http://www.ilnd.uscourts.gov.

Dated: March_, 2020                          Respectfully submitted,

                                             **LINDRAN PROPERTIES, LLC
                                             (SHORELINE)**

                                             By: /s/ *Kevin H. Morse*
                                                     One of Its Proposed Attorneys

                                             Scott N. Schreiber (#06191042)
                                             Kevin H. Morse (#06297244)
                                             CLARK HILL PLC
                                             130 East Randolph Street | Suite 3900
                                             Chicago, Illinois 60601
                                             T: (312) 985-5595
                                             F: (312) 985-5984
                                             sschreiber@clarkhill.com
                                             kmorse@clarkhill.com

2

# Exhibit A
## Bid Procedures

223588693.v3

## Bid Procedures

a.   **Property**. The "Property" means the improved real property located in Chicago, Illinois consisting of 264 low income housing units in 13 buildings as more fully described in the *Real Estate Purchase and Sale Agreement* (the "Agreement") entered into on January 17, 2020 by and between Lindran Properties LLC (the "Debtor") and PRE Holdings 14 LLC. The Property will be sold to the Stalking Horse Bidder subject to qualified overbids.

b.   **Bid Requirements**. Any bid for the Property must be submitted in writing and determined by Debtor, in its reasonable business judgment, and in consultation with the Trustee[1] to have satisfied the following requirements (the satisfaction of which creates a "Qualified Bid" and "Qualified Bidder"):

   (i)    Initial Overbid: Debtor has entered into the Agreement with PRE Holdings 14 LLC to be the Stalking Horse Bidder (the "Stalking Horse Bidder") for the purchase of the Property. The consideration proposed by each bid seeking to acquire the Property must equal or exceed the sum of:

      (A)    cash in the amount of $3,900,000.00 (the "Stalking Horse Bid"); plus

      (B)    $50,000 in cash; plus

      (C)    The Break-Up Fee and Expense Reimbursement (defined in Paragraph (h) below) (collectively, the "Initial Overbid")

   (ii)    Deposit: Each bid must be accompanied by a cash deposit in the amount of five percent (5%) of the bid to be held in an escrow account to be identified and established by Debtor, with the consent of the Trustee (the "Deposit").

   (iii)    Agreement: Each bid seeking to acquire the Property shall include a clean and blackline version clearly marked to show any changes requested by the bidder compared with the Agreement and all other required provisions set forth in these Bid Procedures, including, without limitation, the City of Chicago Bid Requirements set forth in Paragraphs b(viii)(A)-(B) of these Bid Procedures. For the avoidance of doubt, the Agreement, or any other agreement contained in a Qualified Bid, remains subject to final approval by the Court at the Sale Hearing.

   (iv)    Closing Date: Each bid must provide for a closing to occur on or within fourteen (14) days of entry of the Sale Order, unless continued by agreement.

   (v)    Superior Proposal; Bid Documents: Except as otherwise provided herein, each bid must be, in reasonable business judgment of the Debtor, in consultation

---

[1] The "Trustee" shall mean UMB Bank, N.A., the duly-appointed and acting successor trustee under the indenture for the Multifamily Housing Revenue Bonds: Shoreline Portfolio Project (Series 2016A, Taxable Series 2016B, Subordinate Series 2016C)

147565669.1
223588693.v3

with the Trustee and City of Chicago, substantially on the same or better terms than the terms of the Agreement and the Stalking Horse Bid. Each bid must include duly executed transaction documents necessary to effectuate the restructuring transactions contemplated in the bid (the "Bid Documents").

(vi)    Demonstrated Financial Capacity; Committed Financing: A Bidder must have, in the Debtor's reasonable business judgment, in consultation with the Trustee and City of Chicago, the necessary financial capacity to consummate the proposed transactions required by its bid. Each bid must also include committed irrevocable financing, documented to Debtor and City of Chicago's reasonable satisfaction, that demonstrates the bidder has received sufficient debt and/or equity funding commitments to satisfy the bidder's Purchase Price and other obligations under its bid, including the City of Chicago Bid Requirements (set forth below) and identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom Clark Hill PLC should contact regarding such committed financing. Such funding commitments or other financing shall not be subject to any internal approvals, syndication requirements, diligence, credit committee approvals, or any other contingencies, and shall have covenants and conditions reasonably acceptable to the Debtor, after consultation with the Trustee and City of Chicago.

(vii)   Identity: Each bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such bid (including each equity holder or other financial backer of the bidder if such bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any bid. Each bid must also include contact information for the specific person(s) whom Clark Hill PLC should contact regarding such Bid.

(viii)  City of Chicago Bid Requirements; Third Party Beneficiary:

(A)    All Qualified Bids, including the Stalker Horse Bidder, shall provide the City of Chicago, Department of Law (Attn: Greg Janes) and Debtor with: (a) proof of access to funds to rehabilitate the Property; (b) a proposal for rehabilitation of the Property and a plan to bring the Property into full compliance with the Municipal Code of Chicago within a reasonable time from the date of purchase with specific benchmarks for achieving such compliance; and (c) either (i) allow tenants to remain at the Property for at least 90 days or for the term of their lease, whichever is greater; or (ii) provide Relocation Assistance.[2]

---

[2] "Relocation Assistance" shall mean referrals to comparable and suitable replacement properties at market affordable rent and the reimbursement of reasonable and documented costs, including an application fee, security

2

        (B)    Enforcement. If the Successful Bidder fails to comply with the requirements set out in Paragraph b(viii)(A) above, the City of Chicago, Department of Law (Attn: Greg Janes) shall be entitled to enforce, as a third party beneficiary of the Agreement, the City of Chicago Bid Requirements set forth in the Agreement, in the Circuit Court of Cook County.

(ix)    Contingencies; No Financing or Diligence Outs: A bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

(x)    Irrevocable: A Qualified Bid shall be irrevocable unless and until the Debtor accepts a higher Qualified Bid (as defined herein) and such bidder is not selected as the backup bidder (as defined herein).

(xi)    Expenses: Each bidder presenting a bid or bids shall bear its own costs and expenses (including legal fees) in connection with the proposed transaction.

(xii)    Authorization: Each bid must contain evidence that the bidder has obtained authorization or approval from its Board of Directors (or a comparable governing body acceptable to the Debtor) with respect to the submission of its bid and the consummation of the transactions contemplated in such bid.

(xiii)    As-Is, Where-Is: Each bid must include a written acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Property prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the bidder's proposed Agreement.

(xiv)    Existing Violations. Each bid shall provide that the bidder must acquire the Property subject to all building code violations and court cases arising from building code violations (but not any monetary fines, penalties, or awards assessed before the closing date of such purchase).

c.    **Bid Deadline**. Each bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before **June 1, 2020** by each of the following:

---

deposit and moving costs, not to exceed $1,500 in aggregate per unit, related to the involuntary relocation of a tenant prior to the expiration of 90 days from the closing of the Sale or the term of the lease, whichever is greater. No Relocation Assistance shall be provided if a tenant voluntarily vacates a unit prior to or upon the expiration of the 90-day period or the term of their lease.

3

223588693.v3

(i)     Debtor's counsel, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, Attn.: Scott Schreiber (sschreiber@clarkhill.com); Kevin H. Morse (kmorse@clarkhill.com); and Chad Poznansky (cpoznansky@clarkhill.com)

(ii)    Trustee's counsel, McDermott Will & Emery LLC, 444 W. Lake Street, Suite 4000, Chicago, Illinois 60606, Attn: James W. Kapp III (jkapp@mwe.com)

(iii)   City of Chicago's counsel, City of Chicago, Department of Law, City of Chicago, Department of Law, 30 N. LaSalle Street, Suite 700, Chicago, Illinois 60602, Attn: Greg Janes (greg.janes@cityofchicago.org) and Chuck King (chuck.king@cityofchicago.org).

Any party interested in submitting a bid shall have the opportunity to enter the Property and make physical inspections and/or review all contracts, leases, permits, environmental reports, financial statements, and other such books and records related to the ownership and operation of the Property within the possession and control of the Receiver ("Due Diligence"). The Debtor shall cooperate and coordinate with the interested party and Receiver with the completion of the Due Diligence prior to the Bid Deadline.

d.    **The Auction**. If one or more Qualified Bids are submitted, in addition to the Stalking Horse Bid, the Debtor will conduct an auction (the "Auction") on **June 4, 2020 at 10:00 a.m.**, at Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601 to determine the highest and best offer with respect to the Property. The Qualified Bid that, in the reasonable business judgment of Debtor, in consultation with the Trustee and City of Chicago, constitutes the highest and best offer and meets, at a minimum, all the Bid Requirements set forth herein, will become the "Successful Bid" and the applicable Qualified Bidder, the "Successful Bidder." Subject to court approval, the Successful Bidder will then be entitled to purchase the Property in accordance with the terms of the Successful Bid. If no additional Qualified Bids are submitted, the Debtor will cancel the Auction and proceed with the Stalking Horse Bid as the Successful Bid.

e.    **Terms of Overbids**. During the course of the Auction, Debtor shall, after the submission of each overbid, promptly inform each Qualified Bidder which overbid reflects, in the view of the Debtor, in consultation with the Trustee, the highest or otherwise best bid for the Property. All overbids in excess of the Initial Overbid at the Auction shall initially be in minimum increments of at least $25,000 in cash.

f.    **Highest or Otherwise Best Bid**. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor, in consultation with the Trustee and City of Chicago, shall consider the following factors in addition to any other factors that Debtors deem appropriate: (i) the number, type, and nature of any changes to the applicable Agreement requested by the Qualified Bidder; (ii) the amount and nature of the total consideration; (iii) whether the Qualified Bid includes a Portfolio Transition Services Agreement on same or similar terms; (iv) the likelihood of the bidder's ability to close a transaction and the timing thereof; (v) the net economic effect of any changes to the value to be received by Debtor's estate from the transaction contemplated by the Bid

4

Documents; (vi) the tax consequences of such Qualified Bid; and (vii) compliance with the Chicago of Chicago Bid Requirements set forth in Paragraphs b(viii)(A)-(B) above.

g.   **Backup Bidder**. If an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Property, as determined by Debtor in the exercise of its reasonable business judgment, in consultation with the Trustee and City of Chicago, shall be required to serve as "Backup Bidder." Should the Successful Bidder fail to consummate the sale of the Property, for any reason whatsoever, the Backup Bidder will become the new Successful Bidder and will be both entitled and obligated to consummate the sale of the Property. Debtor may designate as many Backup Bidders as necessary until either the Property is sold or no Qualified Bidders remain eligible to serve as Backup Bidder.

h.   **Bid Protections**. In the event that the Debtor accepts a Successful Bid in accordance with the Bid Procedures (an "Alternative Transaction"), other than an overbid by the Stalking Horse Bidder, the Stalking Horse Bidder shall be entitled to: (i) payment of a break-up fee (the "Break-Up Fee") in an amount equal to three percent (3%) of the Stalking Horse Bid; and (ii) any properly documented, reasonable costs and expenses incurred by Stalking Horse Bidder in negotiating and documenting the Proposed Transaction in an amount up to $100,000 (the "Expense Reimbursement"). The Break-Up Fee and Expense Reimbursement shall be paid in cash from the proceeds of, and concurrent, with the closing of any Alternative Transaction or as otherwise ordered by the Bankruptcy Court. The Break-Up Fee shall be paid as and constitute a superpriority administrative expense claim senior to all other administrative expense claims and payable only from the proceeds from any Alternative Transaction, prior to any recovery by any lienholder under Section 364(c)(1) of the Bankruptcy Code. For the avoidance of doubt, the Stalking Horse Bidder shall not be provided a credit for the Break-Up Fee or Expense Reimbursement in any overbid and any such overbid must be paid in cash. Furthermore, the Break-Up Fee shall constitute a superpriority administrative expense claim solely against the proceeds of an Alternative Transaction and shall not be a claim against the Debtor's estate.

i.   **Credit Bid.** The Trustee shall be allowed to credit bid for the Property pursuant to Section 363(k) of the Bankruptcy Code. If the Trustee is the Successful Bidder in an Alternative Transaction, the Trustee shall pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder in cash, as well as any valid liens and claims of greater priority, within three (3) days of the Closing or, if after Closing, within three (3) days after receipt of notice by the Trustee that the Receiver's certificates have been approved by the Housing Court or other applicable authority.

j.   **Return of Deposit**. The Successful Bidder's Deposit shall be applied to the purchase price of such transaction at closing. The Deposit of each Qualified Bidder, including the Stalking Horse Bidder if it is not the Successful Bidder or Backup Bidder, shall be held in one or more escrow accounts on terms acceptable to Debtor, after consultation with the Trustee, and shall be returned (other than with respect to any Successful Bidder or Backup Bidder) on or within five (5) business days after the Auction. If a Successful Bidder (other than the Stalking Horse Bidder) fails to consummate a proposed transaction

5

because of a breach by such Successful Bidder, the Debtor shall not have any obligation to return the Deposit attributable to such Successful Bidder, which may be retained by Debtor as damages, without limiting any and all rights, remedies, and/or causes of action that may be available to the Debtor, and Debtor shall be free to consummate the proposed transaction with the Backup Bidder without the need for an additional hearing or order of the Bankruptcy Court.

k.   **Return of Stalking Horse Earnest Money Deposit.** In the event the Sale to the Stalking Horse Bidder or an Alternative Transaction fails to close, including, without limitation, termination pursuant to Section 6 of the Agreement, then the Break-Up Fee and Expense Reimbursement will not be paid to the Stalking Horse Bidder, and the Stalking Horse Bidder will receive a return of $100,000 of the Earnest Money Deposit within three (3) business days of the termination of the Agreement.

l.   **Reservation of Rights.** Debtor reserves its right, in its reasonable business judgment and in consultation with the Trustee and the City of Chicago, to adjourn the Auction at the Auction and/or adjourn the Sale Hearing in open court without further notice. Debtor also reserves its right, on Notice of Motion and Motion, to seek to modify these bid procedures in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Property, including, without limitation: (a) extending the deadlines set forth in these Bid Procedures; (b) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis; (c) canceling the Auction; (d) rejecting any or all Bids or Qualified Bids (other than the Stalking Horse Bid); and (e) increasing the Minimum Overbid Increment.

m.   **Sale Objection Deadline.** Objections, if any, to the Sale must be filed with the Court and served via email (in .pdf or similar format) so as to be **actually received** on or before **June 11, 2020** (the "Objection Deadline") or such other deadline as set by the Court:

>   (i)   Debtor's counsel, Clark Hill PLC, 130 E. Randolph Street, Suite 3900, Chicago, Illinois 60601, Attn.: Scott Schreiber (sschreiber@clarkhill.com); Kevin H. Morse (kmorse@clarkhill.com); and Chad Poznansky (cpoznansky@clarkhill.com)
>
>   (ii)   Trustee's counsel, McDermott Will & Emery LLC, 444 W. Lake Street, Suite 4000, Chicago, Illinois 60606, Attn: James W. Kapp III (jkapp@mwe.com)
>
>   (iii)   City of Chicago's counsel, City of Chicago, Department of Law, City of Chicago, Department of Law, 30 N. LaSalle Street, Suite 700, Chicago, Illinois 60602, Attn: Greg Janes (greg.janes@cityofchicago.org) and Chuck King (chuck.king@cityofchicago.org).

For the avoidance of doubt, any party asserting a lien in the proceeds of the Sale may file an objection to the Sale, on or prior to the Objection Deadline, contesting the sale of the Property free and clear of such asserted liens or contesting the priority of any other lien, claim, or encumbrance against the Property.

6

223588693.v3

n.  **Sale Hearing.** The Sale Hearing shall commence on **June 16, 2020 at 11:00 a.m.** before the Honorable Jack B. Schmetterer in Courtroom 682 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or before any other judge who may be sitting in 682 place and stead. The Sale Hearing may be adjourned (with the consent of the Stalking Horse Bidder or Successful Bidder and Trustee not to be unreasonably withheld) without further notice other than by announcement in open Court or on the Court's calendar. The Debtor shall file and serve a proposed order approving the Sale no later than **June 8, 2020**.

7