

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| LINDRAN PROPERTIES, LLC (SHORELINE) ) | Case No. 20-02834 |
| ) | |
| Debtor. ) | Hon. Jack B. Schmetterer |
| ) | |
| _____) | |

### ORDER AUTHORIZING THE SALE OF THE PROPERTY OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS TO THE STALKING HORSE BIDDER AND GRANTING RELATED RELIEF

Pursuant to the Motion (Docket No. 26) (the "Sale Motion")[1] of Lindran Properties, LLC (Shoreline) (the "Debtor") pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an order authorizing and approving, *inter alia*, the sale (the "Sale") of the Property[2], free and clear of any and all liens, encumbrances, claims and interests ("Liabilities and Encumbrances") and for related relief; and the Court having entered its *Order (A) Approving Bid Procedures and Bid Protections; (B) Approving Notice of the Sale; (C) Scheduling a Sale Hearing and, If Necessary, an Auction; and (D) Granting Related Relief* (Docket No. 107) (the "Sale Procedures Order"); and, pursuant to the Sale Procedures Order, PRE Holdings 14, LLC ("Purchaser") having submitted a stalking horse bid (the "Stalking Horse Bid") pursuant to that certain fully-executed Real Estate Purchase and Sale Agreement dated January 17, 2020, between the Debtor and Purchaser, and attached hereto as

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Sale Motion, the Sale Procedures Order, the Agreement, or the Bankruptcy Code, as the case may be.

[2] The "Property" means the improved real property located in Chicago, Illinois as more fully defined in the Agreement.

**Exhibit A** (the "Agreement") and the City of Chicago Bid Requirements prepared as a supplement to the Stalking Horse Bid; and the Debtor having received no Qualified Bid for the Property other than the Stalking Horse Bid, and accordingly no Auction having been held; and the Debtor having determined in its business judgment that a Sale of the Property to Purchaser pursuant to the Agreement is in the best interest of the Debtor, its estate, its creditors, the City of Chicago, and other parties in interest; and a hearing to approve the Sale having been held on June 16, 2020 (the "Sale Hearing"); and the Court having considered (i) any timely objections to the Sale, and (ii) the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and it appearing that the relief requested is in the best interests of the Debtor, its estate, its creditors and other parties in interest; and upon the record of the Sale Hearing and this entire case; and after due deliberation thereon; and good cause appearing therefor; it is hereby

FOUND AND DETERMINED THAT:[3]

A. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

C. Notice of the Sale Motion, Sale, Sale Hearing, and a reasonable opportunity to object or be heard with respect to the Sale of the Property has been afforded to all interested persons and entities, including the Notice Parties, any party who the Debtor and its representatives reasonably and in good faith determined potentially had the desire and financial

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

2

260019701.v1

wherewithal to effectuate the Sale, and the creditor matrix. Additionally, the Debtor having marketed the Property and provided the opportunity for third parties to conduct due diligence, including, without limitation, physical inspections of the Property.

D.    This notice, as specified in the preceding paragraph and as evidenced by the certificates of service filed with the Court and based on the representations of counsel at the Sale Hearing, constitutes (i) proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, and the Sale of the Property in accordance with 11 U.S.C. §§ 102(1), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014, and (ii) notice in compliance with the Sale Procedures Order; and no other or further notice of the Motion, the Sale Hearing, or the Sale of the Property is or shall be required.

E.    As demonstrated by (i) the Declaration of Andrew Belew and other evidence proffered at the Sale Procedures Hearing and the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Procedures Hearing and the Sale Hearing, the Debtor has adequately marketed the Property by soliciting higher and better offers, conducted the sale process in compliance with the Sale Procedures and the Sale Procedures Order, and a reasonable opportunity has been afforded any interested party to make a higher and better offer for the Property.

F.    Purchaser has complied with the City of Chicago Bid Requirements, including submitting a preliminary proposal for the timely rehabilitation of the Property that has been accepted by the City of Chicago (as may be modified, the "Proposal"). Both Purchaser and the City of Chicago acknowledge that the Proposal is a good faith preliminary estimate and is subject to modification based on additional information and/or future circumstances. Purchaser, the City of Chicago, and the Debtor have entered into an *Addendum to the Purchase and Sale*

*Agreement*, attached hereto as **Exhibit B** (the "Addendum"), that incorporates the City of Chicago Bid Requirements and Proposal into the Agreement and acknowledges the City of Chicago's status as a third-party beneficiary to the Agreement. No other person or entity or group of persons or entities has submitted a higher and better offer for the Property. As no other Qualified Bid has been submitted, and accordingly no Auction has been held, the Debtor seeks approval of the Sale of the Property to Purchaser pursuant to the Agreement in accordance with the Sale Procedures Order and the Sale Motion.

G. No further consents or approvals are required for the Debtor to consummate the Sale of the Property to Purchaser other than the consent and approval of this Court. The consummation of the Sale of the Property pursuant to the terms of the Agreement will not constitute a violation of any provision of the organizational documents of the Debtor or any other instrument, law, regulation, or ordinance by which the Debtor is bound.

H. Upon entry of this Sale Order, the Debtor shall have full power and authority to consummate the Sale of the Property and all related transactions contemplated by the Agreement. The Sale of the Property has been duly and validly authorized by all necessary corporate or other appropriate action of the Debtor, no further shareholder vote, board resolution, or other corporate action is required of the Debtor for the consummation of such Sale, and no consents or approvals are required for the Debtor to consummate such transactions.

I. This Order and the consummation of the Sale of the Property are supported by good business reasons and will serve the best interests of the Debtor, its estate, creditors, and other parties in interest.

J. The marketing and bidding processes implemented by the Debtor and its professionals, as set forth in the Motion, together with the Sale Procedures established by the

Court in the Sale Procedures Order, were fair, proper, and reasonably calculated to result in the best value received for the Property.

K.  Purchaser submitted the Stalking Horse Bid for the Property in good faith, without collusion, and from an arm's-length bargaining position. Purchaser and the Debtor are not Affiliates of each other. Purchaser has not engaged in any conduct that would cause or permit the Sale of the Property to be avoided under section 363(n) of the Bankruptcy Code.

L.  Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such is entitled to all of the protections afforded thereby. Purchaser and the Debtor have acted in good faith in all respects in connection with this proceeding, in that the Stalking Horse Bid was submitted in good faith and the Sale of the Property pursuant to the Stalking Horse Bid is an arm's-length transaction. Purchaser is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

M.  The consideration for the Property under the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Property, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act or any similar laws of any state or jurisdiction whose law is applicable to the Sale.

N.  The consummation of the Sale pursuant to the Stalking Horse Bid will be a legal, valid, and effective sale of the Property to Purchaser, and the transfer of the Property will vest Purchaser with all right, title, and interest in and to Property, free and clear of all Liabilities and Encumbrances, other than the Permitted Exceptions defined in Section 13 of the Agreement (the "Permitted Exceptions"), in accordance with section 363(f) of the Bankruptcy Code, because one

or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

O.      All parties with liens against the Property, holders of any other adverse interests (including any and all Liabilities and Encumbrances other than the Permitted Exceptions) in the Property (together, the "Adverse Parties" and "Adverse Interests"), if any, who did not object to the Motion and the relief requested therein, or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and may be enjoined from taking any action against Purchaser, its Affiliates, or any agent of the foregoing to recover any claim which such person or entity has solely against the Debtor or the Property. All other objections to the Sale of the Property are overruled.

P.      The entry of this Order and the transfer of the Property to Purchaser pursuant to 11 U.S.C. §363 shall not cause Purchaser or any of its Affiliates to be a successor to the Debtor and the transfer of the Property to Purchaser does not subject Purchaser, any of its Affiliates or the Property, to any Liability or Encumbrance whatsoever arising under or out of, in connection with or in any way relating to the ownership or operation of the Debtor or the Property prior to the Closing Date, as defined in Section 17(a) of the Agreement (the "Closing Date"), other than the Permitted Exceptions.

Q.      The Debtor has demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for the Sale pursuant to 11 U.S.C. § 363(b) prior to, and outside of, a plan of reorganization. Time is of the essence in consummating a Sale of the Property and it is in the best interests of the Debtor and its estate to sell the Property within the time constraints set forth in the Motion and the Sale Procedures Order. The terms of the Stalking Horse Bid, as supplemented by the City of Chicago Bid Requirements, are the highest and best

260019701.v1

terms that have been offered for Sale of the Property. The sale of the Property outside of a Chapter 11 plan neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a Chapter 11 plan for the Debtor. The Sale does not constitute a *sub rosa* Chapter 11 plan.

THEREFORE, IT IS HEREBY ORDERED THAT:

1. Any objections that have not been withdrawn, waived, settled, or specifically addressed in this Order and all reservations of rights included in such objections, are overruled.

*Approval of the Sale of the Property*

2. Pursuant to sections 105 and 363(b), (f) of the Bankruptcy Code, the Sale, conveyance, and assignment of the Property to Purchaser pursuant to the Agreement is approved, and the Debtor is hereby authorized and directed to execute any and all documents and take any and all actions necessary and appropriate to effectuate and consummate the Sale of the Property to Purchaser.[4]

3. The Addendum to the Agreement is approved, pursuant to which the City of Chicago Bid Requirements (paragraph (b)(viii) of the Bid Procedures) and Proposal are incorporated into and deemed part of the Agreement. The City of Chicago, Department of Law, shall be entitled to enforce, as a third-party beneficiary to the Agreement, the City of Chicago Bid Requirements, including the Proposal (subject to any modifications as set forth above), in the Circuit Court of Cook County.

4. The transfer of the Property by the Debtor to Purchaser is a legal, valid, and effective transfer and shall vest Purchaser with all right, title, and interest of the Debtor in the Property free and clear of all Liabilities and Encumbrances (including but not limited to any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including Liabilities and

---

[4] To the extent any terms of the Agreement and this Order conflict, the terms of this Order shall control.

Encumbrances in respect of taxes, whether known or unknown, including liens of any of the creditors, vendors, employers, suppliers, or lessors of the Debtors or any other third party, including, without limitation, those Liabilities and Encumbrances set forth on the attached **Exhibit C**. Notwithstanding the foregoing, the Property shall be sold subject only to the Permitted Exceptions.

5. Pursuant to this Order, the Sale shall be binding upon the Debtor, Purchaser, all creditors, members, and owners of the Debtor, all persons having or asserting a lien, claim, or other Adverse Interest against the Debtor or the Property and all parties to any actions or proceedings that directly or indirectly contest the power or authority of the Debtor to sell, assign, and convey the Property or that seek to enjoin any such sale, assignment, or conveyance.

6. All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, parties to or beneficiaries under any employee benefit plan, trade and other creditors, current and former tenants, asserting or having Adverse Interests of any kind or nature whatsoever against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, or its operations prior to the Closing Date, other than the Permitted Exceptions, shall be, and hereby are, forever barred and estopped, from asserting, prosecuting or otherwise pursuing such Adverse Interests of any kind or nature whatsoever against Purchaser or any of its Affiliates, successors or assigns, or the Property.

7. Following the Closing Date, except with respect to Permitted Exceptions under the Agreement, neither the Debtor, nor any holder of an Adverse Interest against the Debtor or the Property shall (i) interfere with Purchaser's title to, or use and enjoyment of the Property, or

institute any suit against Purchaser or any of its Affiliates, based on or related to such Adverse Interest, (ii) collect or attempt to collect or obtain payment on or other relief with respect to such Adverse Interest from the Property, Purchaser, or any of its Affiliates, or the respective assets or properties of any of the foregoing, and the Debtor and all such holders of Adverse Interests are hereby prohibited from doing any of the foregoing.

*Distribution of Sale Proceeds / Possession of the Property*

8. Except for the Earned Earnest Money and Administrative Expense Fund[5], all liens, claims, encumbrances, and interests on the Property, including, without limitation, the asserted liens, claims, and encumbrances of any receiver appointed for the Property (the "Receiver"), the Trustee, and Paper Street Realty, LLC, shall attach to the proceeds from the Sale with the same force, effect, validity, and priority as such liens, claims, encumbrances, and interests had on such Property prior to the Closing Date, pursuant to applicable law and/or any order entered by the Court.

9. For the avoidance of doubt, the Receiver's claim against the proceeds from the Sale shall include all fees and costs incurred by the Receiver with respect to the Property, including, without limitation, those reasonable attorneys' fees and costs incurred by the Receiver in the bankruptcy case (the "Receiver's Bankruptcy Fees"), up to and including the Closing Date, notwithstanding whether such certificates have been filed with or approved by the Housing Court.[6]

---

[5] On June 3, 2020, the Court entered an order establishing an Administrative Claim Fund (Docket No. 122) to provide $375,000 of the Trustee's distribution of the sale proceeds for the payment of all allowed administrative expenses of the bankruptcy estate.

[6] To the extent that any of the Receiver's Bankruptcy Fees are not approved by the Housing Court in connection with the Receiver's certificates, the Receiver reserves the right to assert an administrative expense claim against the Administrative Expense Fund for any Receiver's Bankruptcy Fees.

260019701.v1

10. All Receiver's certificates issued after the Closing Date, pursuant to 65 ILCS 5/11-31-2, and the Receiver's Bankruptcy Fees, shall attach to and constitute liens against the proceeds of the Sale of the same priority as such liens would have had against the Property if issued prior to the Closing Date.

11. Upon the Closing Date, the sale proceeds, including the Earnest Money (less the Earned Earnest Money), less all customary closing costs[7] and credits, shall be deposited in the Debtor's debtor-in-possession bank account. No proceeds of the Sale shall be distributed until: (a) order of the Bankruptcy Court; and (b) all Receiver's certificates for fees and costs incurred up to and including the Closing Date have been approved by the Housing Court, unless alternative arrangements are agreed to in writing by the City of Chicago, the Receiver, the Trustee, and the Debtor. The U.S. Trustee Quarterly Fees may be paid without further order of the Court.

12. Notwithstanding the foregoing, and notwithstanding whether the Receiver is discharged by the Housing Court, the Receiver shall promptly turnover possession, custody, and control of the Property to Purchaser on the Closing Date, including, without limitation, all documents, books and records, and leases related to the Property.

*Additional Provisions*

13. The contemplated Sale has been undertaken by Purchaser and the Debtor at arm's-length, without collusion, and Purchaser will acquire the Property pursuant to the Agreement in good faith under section 363(m) of the Bankruptcy Code, and is, and shall be entitled to all of the protections in accordance therewith.

---

[7] The Trustee has agreed to pay an amount not to exceed $35,000, in addition to the Administrative Claim Fund (Docket No. 122), for all customary seller-side closing costs.

14. The consideration provided by Purchaser for the Property constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

15. The consideration provided by Purchaser for the Property is fair and reasonable and was not controlled by an agreement among potential bidders, and accordingly, the Sale is conclusively found and determined to be not avoidable under section 363(n) of the Bankruptcy Code.

16. This Order shall inure to the benefit of and be binding upon Purchaser, the Debtor, and their respective successors and assigns, including, without limitation, any trustee, examiner, receiver or other fiduciary appointed for the Debtor in its Chapter 11 case, in any superseding proceeding under Chapter 7 of the Bankruptcy Code or in any other insolvency or similar proceeding.

17. Nothing contained in any Chapter 11 plan confirmed in this Chapter 11 case, nor in any agreement subsequently entered into by the Debtor in this Chapter 11 case, nor in any order subsequently entered by the Bankruptcy Court, including but not limited to any order converting to Chapter 7 or dismissing the Debtor's case, may conflict with or derogate from this Order, or any terms contained herein. The provisions of this Order are non-severable and mutually dependent.

18. This Order is binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept,

file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Property. The Cook County Treasurer shall be directed that any and all unascertainable back taxes be shown as void, paid, uncollectable or otherwise not collectable.

19.     On the Closing Date, any of the Debtor's creditors or any person or entity having an Adverse Interest, other than for a Permitted Exception, is authorized and directed to execute such documents and take all other actions as may be necessary to cause the release of its interests against or in the Property, if any, as such interests may have been recorded or may otherwise exist.

20.     Without limiting in any manner the effect of the other provisions of this Order, any person or entity that has filed financing statements, mortgages, mechanics' liens, lis pendens, or other documents evidencing or otherwise asserting a lien against the Property shall be, and hereby is, directed to deliver to the Debtor prior to the Closing Date, in proper form for filing after the Closing Date, and executed by the appropriate parties, copies of termination statements, instruments of satisfaction, mortgage or deed of trust releases, or similar instruments as appropriate to cause the release of any such lien, and in the event any such person or entity fails to comply with the direction set forth in this paragraph or paragraph 18 above, then, after the Closing Date, Purchaser shall be hereby authorized, without the requirement of any further action or order of this Court, either to execute and file or record such statements, instruments, releases, and other documents on behalf of such person or entity releasing such asserted lien in, to, or against the Property or to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the termination or release of any such lien in, to, or against the Property.

260019701.v1

21. Consistent with, but not in limitation of the foregoing, each and every federal, state, and local government agency or department is hereby entitled to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

22. Except as set forth herein, while the Debtor's Chapter 11 case is pending before this Court, this Court shall have and retain exclusive jurisdiction to interpret, construe, and enforce the provisions of this Order in all respects, and further, to hear and determine any and all disputes between the Debtor and Purchaser. For the avoidance of doubt, this Court expressly declines to approve the Portfolio Transition Services Agreement (the "TSA") attached as an exhibit to the Agreement and declines to exercise jurisdiction (if it otherwise has such jurisdiction) to approve or enforce the TSA in any regard. Following the dismissal or close of the Debtor's bankruptcy case, any legal action or proceeding with respect to the Sale of the Property or the transactions contemplated thereunder shall be brought exclusively in the courts of the State of Illinois sitting in Chicago or of the United States for the Northern District of Illinois.

23. At all times, the Housing Court shall retain jurisdiction to approve all certificates of the Receiver pursuant to 65 ILCS 5/11-31-2, which certificates shall attach to the proceeds from the Sale, and all applicable state laws.

24. The automatic stay of section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the Agreement, including, without limitation, with respect to any cash held in escrow pursuant to the provisions thereof.

25. This Order shall take effect immediately, be immediately enforceable and its provisions shall be self-executing. This Order shall not be stayed pursuant to Bankruptcy Rules

260019701.v1

6004(g), 6006(d), 7062, or otherwise. The Debtor is authorized to close the Sale of the Property to Purchaser immediately upon the entry of this Order pursuant to the terms of the Agreement.

Dated: June __, 2020

_____
UNITED STATES BANKRUPTCY JUDGE

**Prepared By:**

Scott N. Schreiber (#06191042)
Kevin H. Morse (#06297244)
CLARK HILL PLC
130 East Randolph Street | Suite 3900
Chicago, Illinois 60601
T: (312) 985-5595
F: (312) 985-5984
sschreiber@clarkhill.com
kmorse@clarkhill.com

14

260019701.v1